NATIONAL LIFE INSURANCE COMPANY OF MONTPELIER v. JUDSON W. LEE and Others.

January 5, 1899.

Nos. 11,255—(78).

**Party-Wall Agreement—Perpetual Covenant Running with Land— Grantee of One Lot Liable to Owner of Other Lot by Foreclosure of Mortgage.**

G. was the owner of lot 8, and D. of lot 9; the two lots adjoining each other.  Stating facts in their chronological order:

G. mortgaged lot 8 to the plaintiff.  G. and D. executed a party-wall contract, by which it was agreed that G., who was about to build on lot 8, might build a wall on the line between the two lots, one-half on each lot; D. and his heirs and assigns to have the right of using the wall, or any part of it, for any building that he or they might thereafter build upon lot 9, provided and upon the express condition that before using the wall he or they should pay to G., his heirs or assigns, one-half of the value of so much of the wall as was so used.  The contract further provided that the agreement should be perpetual, and construed as a covenant running with the land.  D. conveyed lot 9 to the defendants, subject to the conditions of the party-wall contract.  G. died testate, devising lot 8 to his children.  Plaintiff foreclosed its mortgage, itself being

the purchaser at the sale,' and, there being no redemption, became the owner of the property. During the year for redemption, defendants erected a building on lot 9, and in so doing used part of the wall, but have never paid for it. Since plaintiff acquired title to lot 8 under the foreclosure, both it and the defendants have, by their acts, elected to adopt, and to continue to use, the wall as a party wall for their respective buildings.

*Held*, that plaintiff is entitled to recover from the defendants one-half of the value of the part of the wall used by them.

### Same—Use of Basement Wall.

The building erected by G. had a basement and basement walls under it. The building erected by defendants had no basement, but its floor joists rested upon, and were supported by, the basement part of the wall erected by G. *Held*, that the basement wall was used by the defendants, and plaintiff was entitled to recover for one-half of its value, as well as of the part of the wall above the surface of the ground used by the defendants.

Action in the district court for Hennepin county to recover one-half the value of a party wall. The cause was tried before Lancaster, J., without a jury, who ordered judgment in favor of plaintiff for $236.75. From an order denying a motion for a new trial, defendants appealed. Affirmed.

*Francis B. Hart*, for appellants.

Where a common wall is erected by a tenant for years, although it may be a party wall as between themselves, it creates no easement binding upon the owner of the reversion in fee that can prevent such owner, when the term expires, from dealing with the property as if no such wall had been erected. Webster v. Stevens, 5 Duer, 553; Washburn, Easem. (4th Ed.) 614. See also Kimm v. Griffin, 67 Minn. 25. Plaintiff's mortgage was executed prior to the making of the party-wall agreement. By the foreclosure of the mortgage and the acquisition of title through such foreclosure, the party-wall contract became a nullity as to plaintiff's property, and the covenants made by Glessner, the mortgagor, in the party-wall contract, expired with the foreclosure sale to plaintiff. King v. McCully, 38 Pa. St. 76; Davis v. Connecticut, 84 Ill. 508; Shaw v. Heisey, 48 Iowa, 468; Ruggles v. First, 43 Mich. 192; Gamble v. Horr, 40 Mich. 561. See also Pioneer S. & L. Co. v. Farnham, 50

Minn. 315; American B. & L. Assn. v. Waleen, 52 Minn. 23; American B. & L. Assn. v. Stoneman, 53 Minn. 212; Lawton v. St. Paul P. L. Co., 56 Minn. 353; Dickinson v. Kinney, 5 Minn. 332 (409); James v. Wilder, 25 Minn. 305.

*Gilfillan, Willard & Willard,* for respondent.

The right to receive this money for the breach of the covenant passes with the land. See Kimm v. Griffin, 67 Minn. 25; Hendricks v. Stark, 37 N. Y. 106; Everett v. Edwards, 149 Mass. 588; Warner v. Rogers, 23 Minn. 34; Kimball v. Lockwood, 6 R. I. 138; Carlson v. Presbyterian Board, 67 Minn. 436.

MITCHELL, J.

The undisputed facts are that one Glessner was the owner of lot 8, and one Day of lot 9; the two lots being contiguous. In June, 1886, Glessner executed to the plaintiff a mortgage on lot 8.

In July, 1886, Glessner and Day entered into a party-wall contract by which it was agreed that Glessner, who was about to erect a building on lot 8, might build a wall on the line between the lots, one-half on his own lot, and one-half on Day's lot; the basement of the wall to be $8\frac{1}{2}$ feet high; Day, his heirs and assigns, to have the right at any time thereafter of joining to and using the wall, both above and below the surface of the ground, and along its whole length, or any part thereof, for any building which he or they might erect on lot 9, provided and upon the express condition that he or they, before using the wall, should pay to Glessner, his heirs or assigns, one-half of the value of so much of the wall as was so used; that, if the parties failed to agree as to the value of the wall, each party should choose one person, and the two thus chosen a third, and the three thus chosen should assess its value, and their decision should be final, and binding upon both parties. It was further provided that,

"If it shall hereafter become necessary to repair or rebuild the whole or any portion of said party wall or walls, the expense of such repairing or rebuilding shall be borne equally by them [the parties], their respective heirs and assigns, as to so much and each portion of said walls as the said parties, their heirs and assigns, shall or may use jointly."

Also "This agreement shall be perpetual and at all times be construed as a covenant running with the land."

Subsequently Day conveyed lot 9, "subject to the conditions of the party-wall contract," and this title is now in the defendants.

Very soon after the execution of this agreement, Glessner erected a building on lot 8, placing half the wall on lot 9, as agreed. In October, 1894, Glessner died testate; having devised lot 8 to his wife for life, with remainder to his children.

In September, 1895, the plaintiff, on default in the conditions of its mortgage, foreclosed, and bid in the property for the amount due. There being no redemption, the plaintiff became the absolute owner of lot 8 in September, 1896. On June 15, 1896, the executrix of Glessner's estate assigned to plaintiff all her interest in any moneys which had or might thereafter accrue to her as executrix under and by virtue of the party-wall contract.

In July and August, 1896, the defendants erected on lot 9 a one-story building, without a basement, and in so doing used a part of the wall; the floor joists resting upon the basement part of the wall. Two arbitrators were appointed by the plaintiff and defendants, respectively, as provided by the party-wall contract, to assess the value of the part of the wall used by the defendants; but the two thus chosen were not able to agree, and never have agreed, upon a third. Both parties are, as must be assumed in the absence of any showing to the contrary, in possession of their respective lots, and are continuing to use the wall as a party wall between their respective buildings.

Upon this state of facts the court ordered judgment in favor of the plaintiff for the value of one-half of that part of the wall used by the defendants, including that part of the basement wall used as a support for the floor joists of the defendants' building, and adjudging the amount to be a specific lien on defendants' lot 9.

It is very clear that the defendants cannot continue to use this wall as a party wall without paying somebody one-half the value of the part used. That one must be either the plaintiff or the devisees of Glessner. As between the parties to the contract, and their privies, the covenants of the party-wall agreement would run

with the land. Kimm v. Griffin, 67 Minn. 25, 69 N. W. 634. Hence, plaintiff acquired nothing by virtue of the assignment from Glessner's personal representative.

But this is by no means decisive of the case. By the terms of the party-wall contract, the payment of one-half the value—not the cost—of the part of the wall proposed to be used was expressly made a condition precedent to its use. The only fair and rational construction of the contract is that the whole wall was to remain the property of Glessner, his heirs or assigns, subject to the right of Day, his heirs or assigns, to purchase so much of it as he or they might desire to use, by paying one-half of its then value, when— and not till then—he or they would acquire title to one-half of the wall.

This wall was appurtenant to lot 8, and as such all the right, title or interest of Glessner in it passed to plaintiff, under the title to that lot acquired under the foreclosure, which related back to the date of the mortgage. True, Glessner could not create any easements or incumbrances on the lot which would bind the plaintiff. Hence, when plaintiff acquired title, it could have torn down the half of the wall situate on lot 8, which, from the nature of the case, would have destroyed the whole wall. But it had the right to elect to accept and adopt the wall, and to continue to use it as a party wall for its building, and by its acts it has elected to do so. But in doing so it must take the wall with its burdens as well as its benefits, and hence accepted it subject to the right of the defendants to continue, if they so elected, to use the wall as a party wall for their building. This they have, by their acts, elected to do. But in so electing they also must accept the resulting burdens, as well as benefits, and can use the wall only upon making payment to the owner of the wall (the plaintiff, as successor in interest of Glessner, the builder) of half the value of so much of it as they propose to use.

It is further urged that in any event the defendants are not liable to pay half the value of any part of the basement wall, because they have not used it. They may not be using it as beneficially for themselves as if they had put a basement under their building, but we are of opinion that availing themselves of the basement wall

75 M.—11

.as a support for the joists of their building constitutes a use of it, and renders them liable to pay for it, the same as for the part used above the surface of the ground.

Order affirmed.

CANTY, J. (dissenting).

I concur in the foregoing opinion, so far as it holds that the covenant of Day to pay for the half of the wall, when he should join to it and use it, ran with the land of Glessner until Day, his heirs or assigns, did join to and use the wall. Thereupon the covenant became an absolute promise to pay immediately for work and labor performed in building a party wall for the mutual benefit of both parties, and to pay for the easement thus obtained by Day in the land of Glessner.

Surely, this covenant, after it has become an absolute promise to pay money immediately for a past consideration, will no longer run with the land of the promisee. It follows from this that if Day's grantees had exercised their option to join to the wall, and had joined to it, during the lifetime of Glessner, the sum due would pass to Glessner's personal representatives. But the option was not exercised, and the wall used by such grantees, until after Glessner's death. Therefore the sum due belonged to his devisees.

The foregoing opinion concedes this. But on what principle do the majority transfer to the plaintiff the sum due to these devisees? The majority concede that the covenant to pay this money does not run to plaintiff with the land of Glessner; and yet they allow plaintiff to adopt the party-wall contract, and thereby draw this money to itself. Plaintiff might do as it has done,—adopt the physical conditions it found on the line of its land,—but it had no right to adopt that contract.

The only principle of law under which plaintiff could claim the benefit of the wall is that it was attached to the realty, and for that reason plaintiff could take it with its attendant burdens, but clearly this past-due money will not pass to plaintiff under any such principle. He takes the benefits and burdens of the wall as it stands, not of the contract under which it was built. Glessner built the wall, maintained it, and kept it ready for Day to join to

it. Day's grantees did join to it and use it until the time to redeem from the foreclosure expired.

True, there was during all this time a paramount incumbrance on the land covered by Glessner's half of the wall. The grant of the easement which he had made to Day, and which easement the latter had a right to use on paying as stipulated, is in the nature of a conveyance of real estate, and no covenant against such incumbrance is implied. But Glessner covenanted to maintain on his part the wall perpetually, and that is a covenant against the incumbrance. That incumbrance has been satisfied by the mortgagee in adopting the wall. The defendants must pay the sum due, less the cost of removing the incumbrance. As it cost nothing to remove it, they must pay the devisees in full, or at least all except nominal damages, which they may deduct on account of the existence of the incumbrance.

The mortgagee, at his election, takes the half of the wall attached to his land; but there is no legal principle on which it can be held that the past-due price of the other half on the Day lot is attached to the realty of the Glessner lot, and passes with it to the mortgagee on foreclosure. There is nothing in the distinction made by the majority, between agreeing to pay the original cost of the wall and the value of it at the time Day's grantees attempted to join to it, which should change the result in this case.

In my opinion, plaintiff is not entitled to recover, and the order appealed from should be reversed.