## ADAMS *v.* NOBLE.

PARTY WALLS—COVENANTS RUNNING WITH LAND.

A party-wall agreement whereby the first party is given the right to build the wall at his own expense, and the second party, his heirs, executors, administrators, or assigns, is given the right to connect with the wall at any time upon payment to the first party, his heirs, executors, administrators, or assigns, of one-half the cost, the parties then to become joint owners, and which expressly provides that the undertaking shall be perpetual, and shall create covenants running with the land, entitles the successor in title of the first party to the payment made on the use of the wall by the second party or his assigns, as against one who claims under an assignment of the agreement.

Appeal from Kent; Adsit, J. Submitted May 4, 1899. Decided July 5, 1899.

Bill of interpleader by William M. Adams and George W. Hart against Albert D. Noble, Mary A. Kendall, and Abbie A. Weller, to determine the title to a fund arising from a party-wall agreement. From a decree for defendant Kendall, defendant Noble appeals. Affirmed.

120 MICH.—35.

*T. J. O'Brien* and *James H. Campbell*, for appellant.

*Champlin & Stone*, for defendant Kendall.

MOORE, J. In August, 1875, a contract was made between Peter Kantenberger and Gerret Brusse, with the following provisions:

"*Whereas*, the said Kantenberger is seised and possessed in fee of that certain piece of land, situate in said city, known and described as lot No. three (3) in block No. one (1) of the original Converse plat of a subdivision of said city, which plat is now vacated, and said Brusse is seised and possessed in fee of that other piece of land adjoining and lying along the westerly side of said first parcel, and being lot No. four (4) of said block No. one (1) of said vacated plat, said premises being on the north side of Grand river, fronting on West Bridge street, and between West Water (or Front) street and Grand river; and

"*Whereas*, the said Brusse is about building on his aforesaid lot a brick building, the easterly wall whereof it is intended shall be not less than sixteen inches thick, and shall rest the one-half its width on the west margin of said Kantenberger land, and the other half its width on the east margin of the said Brusse land:

"*Now, therefore*, the aforesaid parties of the first and second part agree to and with each other as follows:

"1. That said Brusse shall have the right, at his own present charge and expense, to place, erect, keep, and maintain said wall one-half its width on the west margin of the said lot No. three (3) of block No. one (1) aforesaid.

"2. That said Kantenberger, his heirs, executors, administrators, or assigns, may at any time hereafter, whenever he or they may see fit, make connection to said party wall, and use the same in the construction of any building he or they may erect on said lot No. three (3), so that from thenceforward such wall shall be and become the division wall between the buildings erected on said lots three and four (3 and 4), and shall belong to, and be kept and maintained by, the owners of such buildings at their equal expense: *Provided*, always, and the above second clause, and the rights thereby conferred, shall depend and be contingent upon the said Kantenberger, his heirs, executors, administrators, or assigns, paying or causing to be paid to the said

Brusse, his heirs, executors, administrators, or assigns, the one-half part of the original cost or expense of said wall, for material and construction, to be arrived at either by actual statement of the same or by appraisal of competent persons. And until such cost or expense is actually paid to the said party of the second part, his legal representatives, heirs, or assigns, the said party of the first part shall not make any attachment to said wall, or use the same in any manner or for any purpose, as a party wall or otherwise; but, when such payment is duly made by said party of the first part, his legal representatives, heirs, or assigns, then the said wall, and the whole thereof, shall be and become the joint property of the owners of the buildings which it supports and divides.

"*Further*, the parties hereto, each to the other, hereby agree that the aforesaid agreement and undertaking shall be perpetual, and shall create covenants running with the lands described above, and shall be and remain forever binding upon said parties, and their heirs and assigns, forever."

This case depends upon the construction to be given to this contract. The owner of lot 3 has recently used the party wall, and is ready to pay for so doing. Mr. Noble claims he is entitled to the fund, for the reason that he has an assignment of the contract in relation to the wall. Mrs. Kendall claims she is entitled to it, because by *mesne* conveyances she has become the owner of lot 4. The court below found in favor of Mrs. Kendall. From that decree Mr. Noble appeals. His solicitors say in their brief that there is only one point in the case; that there is no statute of this State, nor reported decision of this court, on this point; that—

"The rule of law upon which we rely is as follows: An agreement for a party wall to be built by one party, half the cost to be paid to him by the other party whenever he should desire to use it, is personal; and such payment cannot be enforced by a grantee of the party who built the wall, though the agreement also provided that it should be construed as a covenant running with the land."

They cite in support of that proposition *Sebald* v. *Mulholland*, 155 N. Y. 455; *Voight* v. *Wallace*, 179 Pa. St.

520; *Weld* v. *Nichols,* 17 Pick. 538; *Joy* v. *Savings Bank,* 115 Mass. 60; *Gibson* v. *Holden,* 115 Ill. 199 ( 56 Am. Rep. 146 ); *Behrens* v. *Hoxie,* 26 Ill. App. 417; *Bloch* v. *Isham,* 28 Ind. 37 ( 92 Am. Dec. 287 ); 1 Jones, Real Prop. § 800; *Parsons* v. *Loan Ass'n,* 44 W. Va. 335; and other cases.

It is the claim of the solicitors for Mrs. Kendall—

"1. That the covenant to pay and to receive the money paid is, under the agreement, a covenant running with the land, and passes to the grantees by deed of the covenantors.

"2. That, under this contract, the title of the whole wall was vested in Mrs. Kendall until payment by the grantees of Kantenberger, and, when such payment is made to Mrs. Kendall, there is, by force of the covenant, a constructive sale by her of the undivided half of the whole wall, which then becomes the joint property of the owners of the buildings which it supports and divides."

To the last-named proposition they cite *Gibson* v. *Holden,* 115 Ill. 207 ( 56 Am. Rep. 146 ). To the first proposition they cite *Mott* v. *Oppenheimer,* 135 N. Y. 312 ( 17 L. R. A. 409 ); *Weyman's Ex'rs* v. *Ringold,* 1 Bradf. Sur. 40; *King* v. *Wight,* 155 Mass. 444; *Richardson* v. *Tobey,* 121 Mass. 457 ( 23 Am. Rep. 283 ); *Maine* v. *Cumston,* 98 Mass. 317; *Tomblin* v. *Fish,* 18 Ill. App. 439; *Roche* v. *Ullman,* 104 Ill. 11; *National Life Ins. Co.* v. *Lee,* (Minn.) 77 N. W. 794; and many other cases.

It is insisted by the solicitors for Mrs. Kendall that a distinction is to be made between the cases where the covenant to reimburse is personal to the party who built the wall, and those where the covenant to reimburse is by one party, his heirs, executors, administrators, or assigns, to the other party, his heirs, executors, administrators, or assigns, and that this contract belongs to the last-named class. It is urged that, when this distinction is borne in mind, the conflict between the authorities is more apparent than real.

It is difficult to harmonize all the authorities, but we think they may fairly be divided into two classes,—one class holding that the covenant for payment is personal,

and does not run with the land, when it is apparent from the contract that the payment should be made to the party building the wall, and there are no words indicating that the right to receive payment shall pass to his assigns; the second class holding that the covenant runs with the land, and passes to the purchaser or assignee, when the contract evinces such intention, and where the language used is between the parties and their assigns, and the contract declares the covenant shall be perpetual, and binding upon the parties and their heirs and assigns. 1 Jones, Real Prop. § 799, reads as follows:

" A party-wall agreement in the usual form between adjoining landowners runs with the land. Thus, an agreement under seal between adjoining lot-owners, for themselves, their heirs and assigns, acknowledged and recorded, and providing that either party may build a party wall, one-half on the land of each, and that, whenever the other party uses the wall so built, he or she shall pay one-half the cost of its erection, is a covenant running with each lot. Such an agreement creates an easement of use and support in favor of each lot-owner and his successors in title in the half of the wall which stood on the other lot, and in the land under the same. Each lot of land becomes entitled, therefore, to the benefits, and subject to the burdens, arising from the covenants contained in the agreement, and relating to the erection and maintenance of the wall. They inhere in and belong to it."

In this case Brusse was given the right, at his own cost and expense, to erect one-half the wall on lot 3. When the wall was erected, the right to have the wall remain there could not be withdrawn, and, though it was on Mr. Kantenberger's land, the latter, his heirs, executors, and assigns, could none of them use it until he or they had paid Brusse, his heirs, executors, and assigns, one-half of the original cost of the whole wall. This they had a right to do whenever they desired to make such use of the wall, and that right could be enforced when the money was paid, even though not asserted until long after Brusse was dead. The contract then provided that, when the money was so paid, the said wall, and the whole thereof, should become

· the joint property of the owners of the buildings which it helps to support; that the agreement should be perpetual, creating covenants running with the land, and binding upon the parties, their heirs and assigns, forever. We think this contract falls within the second class mentioned above, and the decree is affirmed, with costs.

The other Justices concurred.