[No. 6854. Decided November 1, 1907.]

DAVID M. HOFFMAN *et al.*, *Appellants*, v. GEORGE L. DICKSON *et al.*, *Respondents.*[1]

PARTY WALLS—AGREEMENTS—VENDOR AND PURCHASER—TITLE—DE-FECTS—SPECIFIC PERRORMANCE—DECREE. A party wall agreement, expressly made to run with the land and binding upon the parties and their assigns, containing a covenant to pay one-half the cost of the wall when the wall shall be used, passes the right to compensation to the grantee of the building at the time of such use, and cannot be enforced or discharged until such time; hence an agreement to convey, by warranty deed, lots encumbered by such agreements, is performed by deed of general warranty, and specific performance thereof may be decreed; but the decree cannot require the vendor to discharge the lien or deposit one-half such cost to await the time of payment.

Cross-appeals from a judgment of the superior court for Pierce county, Irwin, J., entered February 14, 1907, upon findings in favor of the plaintiffs, after a trial on the merits before the court without a jury, in an action for specific performance. Affirmed.

*Campbell & Powell*, for appellants.

*Harry H. Johnston* and *John A. Shackleford*, for respondents.

HADLEY, C. J.—This is an action for the specific performance of a contract to sell real estate. The written evidence of the contract is as follows:

"Tacoma, Wash., Feb. 28, 1906.

"Received of A. J. Weisbach, trustee, five hundred dollars earnest money on purchase of lots 21 and 22, block 1104, Tacoma, purchase price $75,000. $39,500 cash on delivery of warranty deed, $35,000 on or before five years. Interest 6 per cent, payable annually, secured by first mortgage on

[1]Reported in 92 Pac. 272; 93 Pac. 523.

this property.   Purchaser to have five days to examine abstract to be furnished by me.

Geo. L. Dickson.
"Minnie Dickson."

The person named in the receipt as trustee acted for, and in behalf of, the plaintiffs in this action, and paid to the defendants the $500 earnest money.   Plaintiffs subsequently discovered the existence of two party-wall agreements affecting the lots mentioned, one agreement affecting lot 21 and the other lot 22.   Lot 21 is joined by lot 20, and on the 20th day of May, 1890, William R. Hawks and the Tacoma Land Company were the respective owners thereof.   On that day said owners entered into a party-wall agreement providing that Hawks, as the owner of lot 20, might erect a four-story brick building on his lot, and place the wall thereof one-half on each of said lots; that Hawks should furnish the materials, construct the wall, and keep a true account of the cost thereof; that before the said adjoining owner of lot 21, its successors or assigns, shall use the wall, it or they shall first pay one-half the cost thereof.   It was also provided that the benefits and burdens of the covenants contained in the agreement shall annex to and run with the land, so long as the wall continues to exist, and shall bind the heirs, legal representatives, and assigns of the respective parties.   The wall was built.   The ownership of both lots had since changed, but the wall has neither been used nor has payment been made therefor by the owner of lot 21.   Said lot 22 is adjoined by lot 23, and on the 28th day of February, 1889, Samuel Isaacs, with his co-owners and the Tacoma Land Company, were the respective owners of said lots.   On that day said owners entered into a party-wall agreement by the terms of which Isaacs and his co-owners might erect a three-story brick building on their lot, and place the wall thereof one-half on each lot.   The other material terms of the agreement are substantially the same as those of the other agreement above mentioned, and in addition to what was recited in the other, it was expressly stated in this that

a lien shall exist against lot 22 for one-half the cost of the wall. This wall was also built, and the owner of lot 22 has neither used the wall nor paid therefor. By mesne conveyances the defendants are now the owners of lots 21 and 22, which they agreed to sell to the plaintiffs as above stated.

On the discovery of the party-wall agreements, the plaintiffs, as the purchasers of said lots under said contract, demanded that the lots should be conveyed to them free from the incumbrance existing by reason of the agreements. The demand was refused, and this suit was then brought. The cause was tried by the court without a jury, and the court found that incumbrances exist for the amounts of one-half the cost of the walls respectively, but held that the incumbrances are such that they cannot now be removed by the defendants, but that the plaintiffs are entitled to a deed of general warranty as against all incumbrances, including these. Both parties have appealed, the defendants claiming that plaintiffs are entitled to no relief except the return of the $500 paid by them; and the plaintiffs contending that they are entitled to a decree requiring a conveyance with the liens removed, or that upon payment of the stipulated purchase price less the amount of one-half the cost of the walls, a conveyance shall be made.

The court found that the evidence was insufficient and too indefinite to support a finding of the cost of the party walls, so that one-half thereof might have been deducted from the amount of the purchase price, even if the authority to require the deduction existed. In view of the determination we have decided must be made in the case, we find it unnecessary to discuss the evidence or to review the action of the court with reference to the cost of the walls.

The appellants, plaintiffs, in their brief say they are unable to understand what the trial court meant when it said that liens exist by reason of the party-wall agreement, but that the respondents, defendants, cannot now remove them. The writer of this opinion confesses that he was at first sur-

prised at this somewhat anomalous statement of the court. As a matter of first impression it appeared to be a simple thing to ascertain the cost of the walls, to pay one-half thereof to the respective wall-owners, and to procure releases of the liens. An examination of the authorities submitted, however, convinces us that the statement of the learned trial court presents a real paradox. Appellants view the court's statement as embodying an absurdity, but in the light of many authorities it becomes a true statement. There is undoubtedly much conflict in the authorities upon the subject of party-wall agreements. Possibly the conflict is often more apparent than real, arising out of the manifold differences in the contract provisions and the consequent attempt of the courts to give proper effect to all the provisions.

It is the contention of respondents that the payment by them to the then owners of the adjoining lots, of one-half the cost of the walls, would not have removed the liens. It will be remembered that the contracts both provide that the benefits and burdens of the covenants contained in them shall annex to and run with the land so long as the respective walls continue to exist, and shall bind the heirs, legal representatives, and assigns of the respective parties. Respondents urge that, under the authorities, when such contracts are made so as to require the benefits and burdens created thereby to annex to and run with the land, the right to receive payment for the one-half of the cost of the party wall belongs only to the owner of the wall at the time it is used by the adjoining owner, at which time only can payment be made. If that theory of the law applicable to these contracts is correct, then the holding of the trial court is correct. These walls have not been used by the adjoining owner. If these appellants become the adjoining owners, it is not known when they or their grantees will use the walls, if ever. It cannot now be known whether the present owners of the walls will be the owners when the walls shall be used. If they shall not, and if the lien can be satis-

fied by payment only to those who shall then own the walls, it is manifest that the respondents cannot now remove the liens.

Our attention is called by respondents to a well-considered opinion of the supreme court of Kansas, *Southworth v. Perring*, 71 Kan. 755, 81 Pac. 481, and also to the opinion on rehearing in the same case, reported in 71 Kan. 761, 82 Pac. 785. After reviewing a number of authorities, it was held that when the covenants of a party-wall agreement are clearly made binding on the heirs and assigns of the respective parties, they create benefits and burdens which run with the land, and where there is a covenant by one party to pay one-half the cost of a wall erected by the other, then if conveyances of each lot are made after the building is erected, the subsequent owner of the vacant lot who makes use of the party wall must make payment to the then owner of the lot upon which the first building was erected. The court concluded its arguments as follows:

"Without attempting to declare what general principles relating to the question presented are sustained by the greater number of decisions, we shall decide it upon these considerations: We regard contracts of the character of that here involved as in their nature so related to the real property affected, and so adapted to impose their obligations and bestow their benefits upon the successors in title of the landowners by whom they are made, that the purpose that they shall have that effect is readily to be inferred from the employment of language having any substantial tendency in that direction. In the present case we hold that the use of the clause making the terms of the contract binding upon the heirs, executors, administrators, and assigns of the parties sufficiently indicates that intention. What the effect of the omission of that provision might have been we do not now determine."

Again, in the opinion on rehearing, the court further said:

"It must be conceded also that none of the cases, in which the right to receive compensation from one using a party wall already built is held to pass to the grantee of the builder, arose upon a contract precisely like the one here involved.

Nevertheless the fact remains that the weight of authority supports the view that party wall contracts may be so drawn as to have their effect, and that in each case the question is whether such is the intention of the parties, as shown by the language used. Moreover, there is abundant authority for the proposition that this intention may be inferred from a provision that the money shall be paid to the first builder or his assigns."

It will thus be seen that the Kansas court declared the weight of authority to be in favor of the rule which it followed, when party-wall agreements contain such provisions as are found in those now before us, requiring that the covenants shall run with the land and be binding upon the heirs and assigns of the parties. The same was held by the supreme court of Nebraska in *Loyal Mystic Legion v. Jones*, 73 Neb. 342, 102 N. W. 621, where a former decision of the same court, *Cook v. Paul*, 4 Neb. (Unof.) 93, 93 N. W. 430, was criticized as being "unofficial." There is undoubtedly much conflict of authority upon party-wall subjects. Indeed, such agreements seem to have been a prolific source for a variety of judicial views. But the views of the Kansas and Nebraska courts, as applied to such provisions as are above discussed, are sustained by the following further authorities: *Adams v. Noble*, 120 Mich. 545, 79 N. W. 810; *King v. Wight*, 155 Mass. 144, 29 N. E. 644; *Platt v. Eggleston*, 20 Ohio St. 414; *National Life Ins. Co. v. Lee*, 75 Minn. 157, 77 N. W. 794; *Mott v. Oppenheimer*, 135 N. Y. 312, 31 N. E. 1097, 17 L. R. A. 409; *Keating v. Korfhage*, 88 Mo. 524; *Thomson v. Curtis*, 28 Iowa 229. See, also, 22 Am. & Eng. Ency. Law (2d ed.), 256, and note 9:

*Thomson v. Curtis, supra*, is based upon a statute in Iowa, but the statute merely emphasizes the principle held by the above authorities, that when heirs, grantees, and assigns are in express terms of the contract mutually bound, the intention is clear that the covenants shall run with the land and shall be

given effect accordingly. In commenting upon the authorities, the opinion in *Adams v. Noble, supra*, says:

"It is difficult to harmonize all the authorities, but we think they may fairly be divided into two classes,—one class holding that the covenant for payment is personal, and does not run with the land, when it is apparent from the contract that the payment should be made to the party building the wall, and there are no words indicating that the right to receive payment shall pass to his assigns; the second class holding that the covenant runs with the land, and passes to the purchaser or assignee, when the contract evinces such intention, and where the language used is between the parties and their assigns, and the contract declares the covenant shall be perpetual, and binding upon the parties and their heirs and assigns."

The contracts involved in the case at bar belong to the second class as the classification is made in the above quotation, and, in view of the above authorities, we therefore find that the holding of the trial court that the incumbrance cannot now be removed by respondents is true, because neither the time for payment nor the person authorized to receive payment and discharge the lien can now be ascertained.

Appellants insist that the cost of the walls should have been ascertained by the court and the respondents required to deposit one-half the amount thereof in the registry of the court to await the time for payment. Such a course would have been inequitable and impracticable. Respondents would have been required to deposit their money and appellants or their grantees might not for twenty years, and possibly never, have used the wall. The money would thus have been idle for an indefinite time. Moreover, the persons who shall ultimately be entitled to receive the payment will be entitled to be heard as to the amount when the same shall be determined. He was not present before the court, and even his identity could not then be known. In so far as there exists an incumbrance against the property, respondents under the contract might now be required to discharge it, if they could do so. But that being impossible, the decree requires them to deliver their deed

with covenants of general warranty. That is exactly what their contract in express words requires, as follows: "Purchase price $75,000. $39,500 cash on delivery of warranty deed," etc. The covenants of warranty will continue against any real incumbrance. The decree provides that the rents which have meanwhile accrued from the purchased property shall go to appellants, and that respondents shall have six per cent per annum interest for the same time upon the delayed cash payment, together with an antedated note and mortgage for the deferred payment on the terms as originally agreed. We think the decree calls for substantial performance of the contract, and that from the record before us it does justice between the parties. What has been said makes it unnecessary to discuss the cross-appeal.

The judgment is affirmed.

RUDKIN, ROOT, DUNBAR, CROW, and MOUNT, JJ., concur.

## ON REHEARING.

[Decided January 22, 1908.]

PER CURIAM.—Since the opinion was filed in this cause, and pending a petition for rehearing, we have discovered certain words used by the trial court in its decree which were not observed by us before the opinion was filed. The decree recites that appellants are entitled to a deed of general warranty "subject to the liens for one-half of the cost of constructing both of said party walls." In affirming the judgment the possible legal effect of the quoted words was overlooked by us since the matter had not been called to our attention.

We stated in our opinion that appellants are entitled to a deed with covenants of general warranty, that being what was specified in the contract. Such should unmistakably be the provision of the decree. The quoted words must have been used in the decree by a mere inadvertence, inasmuch as the record shows that the trial court found one-half the cost of the party walls to be incumbrances. The contract does not

call for a warranty deed subject to any incumbrances.  The reason the trial court did not require the present removal of the liens was because, for reasons stated in the main opinion, they are not now removable.  The persons who may be entitled to the payment when the walls shall be used, if they are ever used, cannot now be ascertained.  Respondents must, therefore, comply with their contract and deliver a general warranty deed; but they cannot comply with the contract by delivering a warranty deed which is expressly made subject to the incumbrances.  We do not believe that the trial court intended the legal effect which the words used may import, and we have not understood that respondents so contend.  But that no controversy may arise as to the true meaning of the decree, it should be modified by striking out the words above quoted.  In all other respects the judgment is affirmed, the petition for rehearing is denied, and the cause is remanded for the purpose of said modification.