**FILED**
**DECEMBER 14, 2021**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| H. FREDRICK PETERSON, | ) | No. 37802-1-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MARK H. REITER and CHRIS A. | ) | |
| REITER, husband and wife, | ) | |
| | ) | |
| Respondents. | ) | |

LAWRENCE-BERREY, J. — Fredrick Peterson appeals the trial court's summary judgment ruling that interpreted the word "Grantee" in a deed to include the original grantee's successors. This interpretation permitted the Reiters, the original grantee's successors, to rebuild their house on the deeded property.

We interpret the word "Grantee" not in isolation, but in the context of the entire deed to determine the intent of the original parties. The deed reflects multiple purposes the parties sought to achieve. These purposes are frustrated if "Grantee" does not include the original grantee's successors. We conclude that the entirety of the agreement clearly demonstrates that the original parties to the deed intended "Grantee" to include the

original grantee's successors.  We affirm the trial court.

FACTS

Fredrick Peterson is an experienced and well-established real estate developer in the Yakima Valley.  In 1982, Mr. Peterson—through his company Crescent Properties, Inc.—obtained title via foreclosure auction to approximately 120 acres of property in the Yakima Valley.  He intended (and still intends) to develop the property into a wine-themed development featuring a winery, commercial, recreational, and retail areas, a resort, and residential options.

In 1986, local businessman Eldon Graves sought to purchase a house at 15 Hardy Road, which was situated on a portion of Mr. Peterson's property.  The 7.69 acre parcel was entirely surrounded by Mr. Peterson's property.  Mr. Peterson and Mr. Graves negotiated the sale for months and settled on a final price of $200,000.  The deed[1] reads, in pertinent part:

> The Grantor, H. Fredrick Peterson . . . conveys to Eldon Graves
> [15 Hardy Road]
>
> . . . .
>
> TOGETHER WITH 30-foot nonexclusive easement for ingress and egress . . . .  Grantor and <u>Grantee</u> shall share equally the cost of maintaining such easement.

---

[1] We attach the deed as an appendix to this opinion.

. . . .

SUBJECT TO present and future assessments due by way of inclusion of the property with the boundaries of Yakima County Road Improvement District No. 69. <u>Grantee</u> agrees to cooperate with and support Grantor in the prosecution of [a lawsuit brought by Grantor, which] challenges the validity of the assessments . . . .

. . . .

SUBJECT TO use restrictions:[2] **Grantor hereby reserves all future development rights for any "above-grade improvements" on the subject property, provided this restriction shall not preclude the <u>Grantee</u> from** improving the property with one or more of the following type improvements, to-wit: landscaping; a three-car garage; residential-type swimming pool, either outdoor or enclosed within a compatible structure with pool decking and a bath house; and/or **the repair or replacement of existing improvements in the event of damage or destruction of the same**; and a fence which is mutually agreed upon by the Grantor and Grantee and is of a type architecturally consistent with other of Grantor's property development within the general geographic area.

THIS RESERVATION OF RIGHTS[3] shall be the property of Grantor, retained by Grantor for the benefits of Grantor's heirs and/or assigns and shall constitute a property right transferrable, in whole or part, only by document of conveyance executed by Grantor, or Grantor's successors or assigns. By virtue of the reservation of development rights by Grantor, Grantee understands that the property subject to this Deed may not be subdivided or improved contrary to the terms of this restriction, unless Grantor conveys, in whole or part, such development rights to <u>Grantee or Grantee's assigns</u>, by appropriate document of conveyance.

---

[2] We refer to this paragraph as the "use restrictions" paragraph.

[3] We refer to this paragraph as the "reservation of rights" paragraph.

3

> SUBJECT TO Grantor's retained right to maintain landscaping on the subject property.
>
> SUBJECT TO DEVELOPMENT OF ADJOINING PROPERTY: Grantor contemplates the possible development of adjoining property with a winery and resort condominium complex. <u>Grantee</u> acknowledges the value of such development to the subject property and agrees to cooperate and support all applications, hearings and proceedings with respect to the development of the property. Specifically, it is anticipated that the development will require an application for planned unit development and not register any objection to such development application.

Clerk's Papers (CP) at 108-09 (emphasis added).

In 1997, Mr. Graves refinanced the property. The refinancing loan was for $368,000, secured by a deed of trust. The loan and security were subsequently assigned to The First National Bank of Chicago.

In 1998, Mr. Graves defaulted on the loan. The property was reconveyed to the bank. Mark and Chris Reiter purchased the property from the bank in November 1999 for $270,000. In 2007, they bought a nearby parcel—11 Hardy Road. Over several years, the Reiters spent more than $100,000 remodeling and upgrading their home, which included building a three-car garage.

In March 2017, the Reiters' home was completely destroyed by a fire. The home was insured and the Reiters received insurance proceeds. They began rebuilding, utilizing the original footprint and design. They asked Mr. Peterson for copies of his

4

county-approved plans showing his proposed structures for the surrounding areas.

Throughout the years, Mr. Peterson had acquired adjoining property and his original

120 acres had expanded to 317 acres.

In July 2017, Mr. Peterson's representative met with Mr. Reiter and discussed the

reservation of rights in the deed and Mr. Peterson's proposed purchase of the Reiters' two

properties on Hardy Road.  The following month, Mr. Peterson spoke with Mr. Reiter

personally about the reservation of rights and again offered to purchase the two

properties.  He sent a letter the following day, which read in part:

> Thank you for taking the time and meeting with Kim and I yesterday.  We believe the purchase offer we made reflected a fair price for your two properties.[4]

> One item in our conversation, which I did not understand, was your comment that the restrictions, in the original Deed (attached), "do not impact the marketability" of your property.  I don't agree with your observations with respect to "marketability" because the reservation of all future development rights for any "above-grade improvements" was clearly retained in a covenant which runs with the land.

> By way of background, the deed restriction was specifically negotiated with Eldon Graves prior to preparation of the deed and closing of the property sale. The document is clear with respect to my future development plans and the potential conflict the home and other improvements would create in executing those plans.  Accordingly, we negotiated the specific use

---

[4]  The record does not reflect what Mr. Peterson offered the Reiters for the two properties.  But in his complaint, he alleged that the value of 15 Hardy Road without the house was $69,200.

restrictions with limited above-grade rights granted only to the "Grantee"—
Eldon Graves. . . .

CP at 173.

In 2019, Mr. Peterson learned that the Reiters had applied for and received a

building permit from Yakima County for a single-family residence at 15 Hardy Road.

Mr. Peterson's counsel sent the Reiters a letter, reiterating Mr. Peterson's prior position

and threatening suit if they continued to rebuild.  The Reiters' general contractor

responded by saying he was advised by the Reiters' insurance company and legal counsel

to continue rebuilding the home.

*Trial court proceedings*

Mr. Peterson filed suit in Yakima County Superior Court seeking a declaratory

judgment that the Reiters could not construct a single-family residential structure on the

property and seeking attorney fees.  The Reiters filed an answer and sought an order

declaring that they could rebuild their house and for an award of attorney fees.

Mr. Peterson eventually moved for summary judgment.  He argued the use

restrictions paragraph allowed only Mr. Graves, not his successors, to repair or replace

the destroyed house.  He attached a lengthy declaration in support of his motion, which

detailed many of the facts above.  The declaration included purported discussions he had

with Mr. Graves prior to the sale of the property:

> I disclosed to . . . Graves my plans for the development of the properties and advised that I would not sell the property without a full reservation of all above-grade development rights. At first, Graves rejected any limitations or reservations on the development rights for the property. Negotiations were at an impasse. We subsequently negotiated a significant price reduction of $50,000 for the property in exchange for my reservation of all "above-grade development rights." The final purchase price for the property was reduced to *Two Hundred Thousand Dollars ($200,000)*. This was well below the fair market value of the property. The price reduction reflected the retention of above-grade development rights. Graves stated his only interest was to live in the house during his lifetime.

CP at 85-86.

The Reiters filed a cross-motion for summary judgment. They argued that "Grantee" included the grantee's successor and that Mr. Peterson's interpretation constituted an unreasonable restraint on alienation. They also argued Mr. Peterson's purported discussion with Mr. Graves—who died years earlier—should be struck because it was inadmissible under RCW 5.60.030, the dead man's statute.

The trial court heard oral argument. After argument, the court orally denied Mr. Peterson's summary judgment motion and granted the Reiters' summary judgment motion.

The trial court did not explicitly rule on the Reiters' motion to strike. It later entered its summary judgment order that set forth the pleadings it considered, which included Mr. Peterson's declaration, without exception.

7

Mr. Peterson timely appealed. The Reiters did not cross-appeal the trial court's failure to strike portions of Mr. Peterson's declaration.

*Motion to strike filed in appellate court*

The Reiters filed a motion to strike those portions of Mr. Peterson's declaration that contained his purported discussions with Mr. Graves. The Reiters argued that RAP 9.13 permits them to object to the trial court's failure to exclude those discussions from the record. In response, Mr. Peterson argued that the motion to strike was not appropriate in the context of a summary judgment appeal.

The motion was argued to a court commissioner. The commissioner, mindful that this court must review the summary judgment record de novo, referred the motion to this panel.

## ANALYSIS

We review summary judgment decisions de novo. *Strauss v. Premera Blue Cross*, 194 Wn.2d 296, 300, 449 P.3d 640 (2019). Summary judgment is appropriate where the pleadings, admissions on file, and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. CR 56(c).

8

The dispositive issue in this appeal is whether the term "Grantee" in the reservation clause extends to Mr. Graves's successors—the Reiters.

*Interpretation of deed*

When interpreting a deed, we aim to give effect to and enforce the intent of the original parties. *Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n*, 156 Wn.2d 253, 262, 126 P.3d 16 (2006). The intent of the original parties is determined from the deed as a whole. *Sunnyside Valley Irrig. Dist. v. Dickie*, 149 Wn.2d 873, 880, 73 P.3d 369 (2003). In *Newport Yacht Basin Ass'n of Condominium Owners v. Supreme Northwest, Inc.*, 168 Wn. App. 56, 64-65, 277 P.3d 18 (2012) (footnote omitted) (quoting *Tacoma Mill Co. v. Northern Pacific Railway Co.*, 89 Wash. 187, 201, 154 P. 173 (1916)), we emphasized that the best evidence of the parties' intent is the deed itself:

> [ ]"[I]f the intention of the parties may be clearly and certainly determined from the language they employ, recourse will not be had to extrinsic evidence for the purpose of ascertaining their intention."[ ] This rule is a practical consequence of the permanent nature of real property—unlike a contract for personal services or a sale of goods, the legal effect of a deed will outlast the lifetimes of both grantor and grantee, ensuring that evidence of the circumstances surrounding the transfer will become both increasingly unreliable and increasingly unobtainable with the passage of time. Accordingly, the language of the written instrument is the best evidence of the intent of the original parties to a deed.

We construe deeds using the same rules of construction that apply to contracts. *Pelly v. Panasyuk*, 2 Wn. App. 2d 848, 864, 413 P.3d 619 (2018). Washington courts follow the objective manifestation theory of contracts. *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005). This approach requires us to focus on the "intention corresponding to the reasonable meaning of the words used" giving those words their "ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." *Id.* at 503-04.

The parties dispute the meaning of the term "Grantee" in the use restrictions paragraph. Mr. Peterson argues it means only Mr. Graves, the original grantee in the transaction. The Reiters argue it means Mr. Graves and his successors. The term is not defined in the deed. Courts may look to the dictionary definition to determine the ordinary meaning of an undefined term. *Quinault Indian Nation v. Imperium Terminal Servs., LLC*, 187 Wn.2d 460, 477, 387 P.3d 670 (2017).

"Grantee" is defined as "one to whom a grant is made." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 989 (1993). The legal definition is similar: "[o]ne to whom property is conveyed." BLACK'S LAW DICTIONARY 845 (11th ed. 2019). If we were to focus on only one word in the deed, Mr. Peterson's interpretation would prevail: Mr. Graves is the "one to whom" Mr. Peterson's grant was made. But we do not focus on one

word when interpreting deeds. We look at the deed as a whole. *Sunnyside Valley*, 149 Wn.2d at 880.

In his reply brief, Mr. Peterson agrees that the term "Grantee" must be given a consistent meaning throughout the deed. If "Grantee" means only Mr. Graves throughout the deed, this would frustrate the purpose of multiple provisions in the deed. For example, it would require Mr. Peterson and Mr. Graves to share the cost of maintaining the 30-foot access easement, but would not require Mr. Graves's successors to share the cost. It would require Mr. Graves to cooperate and support Mr. Peterson in his lawsuit against Yakima County, but would not require Mr. Graves's successors to do so. It would require Mr. Graves to cooperate and support Mr. Peterson's winery and resort development applications, but would not require Mr. Graves's successors to do so.

It is evident from the deed that Mr. Peterson's purpose was to ensure that 15 Hardy Road did not detract from the value of his future winery and resort. He did this by reserving the right to disapprove the fence surrounding the property if it was not architecturally consistent with his development and also by retaining the right to maintain landscaping on the property. This purpose would be frustrated if Mr. Graves's successors could not repair the existing house, resulting in a dilapidated structure next to an upscale winery and resort.

It also is evident from the deed that Mr. Peterson conveyed the right to make residential-type improvements to the property, but reserved to himself the right to develop the property. Specifically, in the use restrictions paragraph, he allowed landscaping, a three-car garage, and a residential-type swimming pool with decking and a bath house. But in the reservation of rights paragraph that followed, he prohibited subdividing, improving, or developing the property contrary to the listed residential-type improvements. To enforce this prohibition, he required "Grantee or Grantee's assigns" to obtain from him an appropriate document of conveyance if they sought to develop the property. CP at 109.

Mr. Peterson's strongest argument that "Grantee" means Mr. Graves only is that the term "assigns" is used in the deed once, in the reservation of rights paragraph. CP at 109. He argues that because the parties included the term "assigns" once in the deed, they purposefully omitted that and similar terms elsewhere. This singular argument does not persuade us to adopt an interpretation that frustrates multiple purposes of the deed. We conclude that the entirety of the deed clearly demonstrates that Mr. Peterson and Mr. Graves intended "Grantee," as used throughout the deed, to include Mr. Graves's successors.

12

*Personal covenants*

Mr. Peterson next argues that the use restriction paragraph contains a personal covenant rather than one that runs with the land because it does not include the words "heirs and assigns" following "Grantee." He cites two cases to support this contention: *Ellensburg Lodge No. 20, I.O.O.F. v. Collins*, 68 Wash. 94, 122 P. 602 (1912) and *Feider v. Feider*, 40 Wn. App. 589, 699 P.2d 801 (1985).

In *Ellensburg Lodge*, adjoining property owners entered into a party wall agreement that provided for future cost sharing of a common wall between them. 68 Wash. at 95. The agreement named the original parties and did not state it was binding on successors or assigns. *Id.* at 97. The property owners sold their land and a dispute arose between subsequent owners. The court explained that a personal covenant is made when "'there are no words indicating that the right to receive payment shall pass to his assigns'" whereas a covenant runs with the land when "'the language used is between the parties and their assigns.'" *Id.* (quoting *Hoffman v. Dickson*, 47 Wash. 431, 92 P. 272 (1907)). However, the court held that the obligations of the party wall had passed through successor deeds that expressly incorporated the party wall agreement, notwithstanding the fact that the agreement did not expressly mention assigns. *Id.* at 98.

13

In *Feider*, two brothers entered into an agreement that constituted a right of first refusal. 40 Wn. App. at 590. The agreement was not recorded until one of the brothers died and the other brother had sold his property to a third party. *Id.* at 591. The deceased brother's heirs filed suit, seeking specific performance or damages for breach. *Id.* The trial court dismissed the action on summary judgment, finding the right of first refusal did not run with the land and was thus a personal contract. *Id.* at 592. The heirs appealed.

This court affirmed, holding that the right of first refusal was not an interest in land and was presumed effective only for a reasonable time. *Id.* Accordingly, the right of first refusal was not enforceable by the deceased brother's heirs and summary judgment was properly granted against them. *Id.* at 590-92.

These cases are not particularly helpful to Mr. Peterson. Both concern written contracts independent from any conveyance of real property. Other than addressing issues of personal versus real covenants, the cases do little to support Mr. Peterson's position because they are factually dissimilar in significant ways. Notably, they do not analyze which rights and restrictions are conveyed in a deed. *Ellensburg Lodge* is—if anything—more helpful to the Reiters because the court found the party wall agreement (which did not mention assigns) passed to assigns through a successor deed that

14

referenced the agreement.  And *Feider* involves a right to first refusal, which is a personal covenant not at issue here.

*Document of conveyance*

Mr. Peterson next argues that the reservation of rights paragraph requires the Reiters to obtain from him a document of conveyance if they want to rebuild their house. We disagree.

As explained earlier, the reservation of rights paragraph requires Mr. Graves or his assigns to obtain from Mr. Peterson an appropriate document of conveyance before subdividing or improving the property contrary to the use restrictions paragraph.  Here, the Reiters sought only to rebuild their house, an improvement that existed in 1987, something allowed in the use restrictions paragraph.  Because the Reiters did not seek to improve the property contrary to the use restriction paragraph, they did not need to obtain an appropriate document of conveyance from Mr. Peterson.

*Extrinsic evidence*

Mr. Peterson contends that extrinsic evidence should not have been considered because there was no ambiguity in the deed.  The Reiters argue that Mr. Peterson himself offered extrinsic evidence that contradicts his position, and extrinsic evidence may be used to help ascertain the meaning of the deed.  We need not address Mr. Peterson's

contention because extrinsic evidence plays no role in our decision to affirm the trial court's ruling. We nevertheless explain why we have discounted portions of Mr. Peterson's declaration that involve his discussions with Mr. Graves.

"Extrinsic evidence is to be used to illuminate what was written, not what was intended to be written." *Hollis v. Garwall, Inc.*, 137 Wn.2d 683, 697, 974 P.2d 836 (1999). It may not be used to redraft, contradict, or modify the language nor is it admissible to show a party's subjective, unilateral intent. *Id.* at 696-97; *Pelly*, 2 Wn. App. 2d at 866.

In his declaration, Mr. Peterson asserted that he would not sell to Mr. Graves without a full reservation of all above-grade development rights and that he successfully reserved all above-grade development rights. This is inconsistent with the deed. The deed reflects that Mr. Peterson's reservation of above-grade development rights was limited. It permitted residential-type improvements and allowed the repair and replacement of existing improvements. Also in his declaration, Mr. Peterson asserted that Mr. Graves said his only interest was to live in the house during his lifetime. We are unsure if he meant that Mr. Graves had no intention of developing the property or if he meant that Mr. Graves desired only a life estate. If he meant the latter, this also is

16

No. 37802-1-III
*Peterson v. Reiter*

inconsistent with the deed. The deed conveys fee simple title to Mr. Graves. It does not reserve any present or future ownership in Mr. Peterson.

To the extent that Mr. Peterson's statements contradict the deed, they are ineffective to contradict the deed and create an issue of material fact. For this reason, we need not rule on the Reiters' motion to strike.

Affirm.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____        _____
Fearing, J.                                              Staab, J.

17

# APPENDIX

Filed for record by and return to:
JAMES C. CARMODY
VELIKANJE, MOORE & SHORE, INC., P.S.
405 East Lincoln
Yakima, Washington 98901

COUNTY EXCISE TAX
DATE 3-7-87
PAID $ 2,640.00
REC. NO. 224026
BY DALE A. GREY, Yakima County Treasurer

2792209

DEED

The Grantor, H. FREDRICK PETERSON, as Assignor of Crescent Properties, Incorporated, a dissolved Washington corporation, for and in consideration of TEN AND NO/100 DOLLARS and other valuable consideration in hand paid, conveys to ELDON GRAVES the following described real estate, situated in the County of Yakima, State of Washington:

Parcel 1 of short plat as recorded in Volume "87" of Short Plats, page 10, records of Yakima County, State of Washington in accordance with that certain Agreement as to Short Plat recorded under Auditor's File No. 2754154, records of Yakima County, Washington.

TOGETHER WITH water, water rights and matters appertaining thereto.

TOGETHER WITH 30-foot nonexclusive easement for ingress and egress, and public utilities, as presently located. Grantor and Grantee shall share equally the cost of maintaining such easement.

TOGETHER WITH GREENBELT: Grantor agrees that a 30-foot strip of real property adjoining the subject property on the North will be planted by Grantor to a landscaped greenbelt. The greenbelt shall be planted in conjunction with the development by Grantor of adjoining property. In the event that Grantor develops the adjoining property with a winery-condominium project, Grantor further agrees to plant the greenbelt with landscape screening in a manner consistent with the other plantings within the development.



SUBJECT TO present and future assessments due by way of inclusion of the property within the boundaries of Yakima County Road Improvement District No. 69. Grantee agrees to cooperate with and support Grantor in the prosecution of that certain lawsuit designated as H. Fredrick Peterson v. Yakima County, being Yakima County Superior Court Cause No. 85-2-02003-0, which lawsuit challenges the validity of assessments arising from the creation of Yakima County Road Improvement District No. 69; such assessments being levied against both the subject property and adjoining parcels of land. The agreement with Yakima County with respect to the subject property requires that all past due assessments be paid into Court pending final determination of litigation. In the event that Grantor is successful in such litigation, the portion of assessments paid by Grantee shall be returned to Grantee, subject to offset for proportionate share of all costs of litigation, including reasonable attorney's fees. Grantor shall control such litigation and shall be the sole person responsible for determination of the course of litigation, settlement or compromise of claims or decisions with respect to any other aspect of the litigation.



SUBJECT TO oil and gas lease as disclosed by document recorded of record under Yakima County Auditor's File No. 2583453.

SUBJECT TO easement and right of way in favor of United States of America, as disclosed by document recorded under Yakima County Auditor's File No. 1155229.

SUBJECT TO easement in favor of Pacific Power & Light Company, as disclosed by instruments recorded under Yakima County Auditor's File Nos. 1177077 and 1361564.

SUBJECT TO restrictions, if any, as disclosed by instruments recorded under Yakima County Auditor's File Nos. 2270719 and 2323848.

SUBJECT TO restrictions, if any, as disclosed by instrument recorded under Yakima County Auditor's File No. 2505398.

-1-

37802-1 vol 1204 CR 000108
OFFICIAL RECORDS 1507

SUBJECT TO future assessments by way of inclusion within weed and mosquito control districts.

SUBJECT TO use restrictions: Grantor hereby reserves all future development rights for any "above-grade improvements" on the subject property, provided this restriction shall not preclude the Grantee from improving the property with one or more of the following type improvements, to-wit: landscaping; a three-car garage; residential-type swimming pool, either outdoor or enclosed within a compatible structure with pool decking and a bath house; and/or the repair or replacement of existing improvements in the event of damage or destruction of the same; and a fence which is mutually agreed upon by Grantor and Grantee and is of a type architecturally consistent with other of Grantor's property development within the general geographic area.

THIS RESERVATION OF RIGHTS shall be the property of Grantor, retained by Grantor for the benefits of Grantor's heirs and/or assigns and shall constitute a property right transferrable, in whole or part, only by document of conveyance executed by Grantor, or Grantor's successors or assigns. By virtue of the reservation of development rights by Grantor, Grantee understands that the property subject to this Deed may not be subdivided or improved contrary to the terms of this restriction, unless Grantor conveys, in whole or part, such development rights to Grantee or Grantee's assigns, by appropriate document of conveyance.

SUBJECT TO Grantor's retained right to maintain landscaping on the subject property.

SUBJECT TO DEVELOPMENT OF ADJOINING PROPERTY: Grantor contemplates the possible development of adjoining property with a winery and resort condominium complex. Grantee acknowledges the value of such development to the subject property and agrees to cooperate and support all applications, hearings and proceedings with respect to the development of the property. Specifically, it is anticipated that the development will require an application for planned unit development and not register any objection to such development application.

Grantee agrees that the contemplated development is in the formative stages, and Grantor is not obligated to proceed or complete such development. Grantee specifically agrees and acknowledges that Grantor retains, without limitation, full and complete ownership and development rights with respect to the adjoining property in any manner or for any lawful purpose as may be determined by Grantor from time to time.

Grantee acknowledges that Grantor has either inspected or had the opportunity to inspect the property being sold herein. It is agreed that no representations, warranties or guarantees have been made by Grantor, or by any agent or person on behalf of Grantor, in any respect as to the condition, quality or value of the property. Grantee has relied upon no representations, warranties or guarantees of Grantor, or any agent or person on behalf of Grantor, as an inducement to this sale.

WITNESS the hand of said Grantor this 27 day of February, 1987.

H. Fredrick Peterson, Individually

H. Fredrick Peterson, President
and Assignee of Crescent
Properties, Incorporated, a
Dissolved Washington corporation.

-2-

37802204 1508P 000109

20

STATE OF WASHINGTON)
)  ss.
County of Yakima )

ON THIS DAY personally appeared before me H. FREDRICK PETERSON, to me known to be the individual described in and who executed the within and foregoing instrument, and acknowledged that he signed the same as his free and voluntary act and deed for the uses and purposes therein mentioned.

GIVEN under my hand and official seal this 27 day of February, 1987.

NOTARY PUBLIC in and for the State
of Washington residing at Yakima
Commission expires 3/8/87 .

STATE OF WASHINGTON)
)  ss.
County of Yakima )

ON THIS 5th day of February, 1987, before me, the undersigned, a Notary Public in and for the State of Washington, duly commissioned and sworn, personally appeared H. FREDRICK PETERSON, to me known to be the Assignee of CRESCENT PROPERTIES, INCORPORATED, a dissolved Washington corporation, the corporation that executed the foregoing instrument, and acknowledged the said instrument to be the free and voluntary act and deed of said corporation, for the uses and purposes therein mentioned, and on oath stated that he is authorized to execute the said instrument and that the seal affixed (if any) is the corporate seal of said corporation.

WITNESS my hand and official seal hereto affixed the day any year first above written.

Notary Public in and for the State
of Washington residing at Yakima
Commission expires 3/8/87 .

YAKIMA COUNTY
WASH
FILED BY
VALLEY TITLE GUARANTEE
Mar 9 4 35 PM '87
BETTIE INGHAM
AUDITOR

—3—

3780204 150CP 000110

21