## LOUIS HOFFMAN v. ALEX. KUHN ET AL.

1. **PARTY WALL.** *Adjoining houses. Effect of their destruction.*
   While the houses stand on either side of a party wall, neither proprietor can do any act to impair the other's property, and either is at liberty to keep the wall in order; but if the houses are accidentally destroyed each is owner in severalty of his own soil, and may dispose as he pleases of so much of the wall as stands thereon.

2. **SAME.** *Rebuilding. Injunction. False issue. Estoppel. Costs.*
   If one of the proprietors attempts to rebuild to the wall, the other can enjoin him; and while the latter is not estopped to rely upon the destruction without his fault of the houses, by having tendered the false issue that the wall is unsafe, he is liable for the additional costs occasioned thereby.

APPEAL from the Chancery Court of Warren County.

Hon. UPTON M. YOUNG, Chancellor.

*Shelton & Crutcher*, for the appellant.

After the fire, the appellant had the right to remove the wall from his lot, the easement of the appellees therein having ceased. The easements which the owners of adjoining lots have in the party wall upon which their buildings rest last only so long as the buildings which were erected upon the wall under the agreement continue to exist, and remain fit for the use for which they were originally erected. When the buildings are destroyed, or rendered unfit for that use, these easements cease, and each proprietor holds his land and his share of the wall freed from the servitude in favor of the adjoining owner; and neither can rebuild upon the wall, so as to again subject the other's land to the servitude, without his consent. *Partridge* v. *Gilbert*, 15 N. Y. 601; *Sherred* v. *Cisco*, 4 Sandf. 480; *Dowling* v. *Hennings*, 20 Md. 179; *Hieatt* v. *Morris*, 10 Ohio St. 523; *Hunt* v. *Ambruster*, 17 N. J. Eq. 208. As there was no statute on the subject when this wall was built, the provisions of the Codes of 1857 and 1871 are inapplicable. The statute (Code 1871, § 1917), being in derogation of the common law, must be strictly construed, and does not accord with the facts of this case. The common law must therefore govern. All the rights of the owners of party walls are, in the absence of local legislation, dependent upon the agreement of the parties. There is no such common-law right. At common law, every man is the absolute owner of his own land, and no other person can subject it to any servitude, or claim any right therein, unless by his consent, or by prescription, which always presumes a grant; and that grant must have some definite limit, and result from some definite agreement. What that agreement was can only be inferred from the circumstances. Where, therefore, we find adjoining houses built upon a common wall resting equally upon the lands of the adjoining proprietors, the only inference we can draw is, that the easements of the respective proprietors in the wall apply only to the particular buildings which were built, and which we find resting upon it. We cannot presume that the wall was originally erected as something separate, distinct and complete in itself, but simply as a part of the buildings which the parties were erecting on their lots, and for the convenience of each party. The consideration, then, upon which

each owner is supposed to have given his share of the land and paid his share of the expense of building the wall was, that he was to have the use of it as a part of the particular building he was then erecting on it, and neither was bound by the compact to subject his land longer to the servitude. It is also true that the wall was not safe, as shown by the evidence, and for that reason it should have been removed.

*Miller & Hirsh*, for the appellees.

An easement or servitude is a right which one proprietor has to some profit, benefit, or lawful use, out of or over the estate of another. *Ritger* v. *Parker*, 8 Cush. 145. The easement of the appellees in this case was the right to use Hoffman's half of the wall to support their building. It was mutual, for Hoffman had the same right to use theirs. The wall then being safe and sound, and both parties enjoying the absolute right to repair or rebuild their own houses at pleasure, how can it be justly said that these easements were destroyed? The easement is the right to use the wall, not to control the building operations of the other proprietor. As long as the wall remains, the easement exists. If the defendants' easement remains and they insist that the wall is not materially injured, then Hoffman's is also subsisting. His right to use the defendants' half of the wall is not denied. It is insisted that Hoffman has the right to remove by reason of his absolute dominion over his own property. It must be conceded that the defendants enjoy an equal right of dominion over their property, and yet the complainant seeks to remove not only his own part of the wall, but that of the defendants also. He has no such power. *Eno* v. *Del Vecchio*, 4 Duer, 53; *Potter* v. *White*, 6 Bosw. 644; *Phillips* v. *Bordman*, 4 Allen, 147. The cases cited by opposing counsel support this view rather than that for which they contend. *Partridge* v. *Gilbert*, 15 N. Y. 601; *Sherred* v. *Cisco*, 4 Sandf. 480; *Dowling* v. *Hennings*, 20 Md. 179. We gather from them that the owners of party walls are burdened by certain obligations to each other, which they cannot arbitrarily ignore; that whether they own the wall as tenants in common, or each owns one half in fee simple and has an easement in the other half, this ownership or easement cannot be destroyed or brought to an

end by one proprietor removing the party wall without the other's consent, unless the condition of the wall justifies it. These principles are consonant with common sense and justice. Washburn on Easements, 536, 546. It is apparent that the complainant regarded the condition of the wall as an essential ingredient in his case. Hence his allegation that it was unsafe, and the testimony he has introduced to sustain it. As it is not proved that the party wall is either destroyed or unfit for use, he is unable to bring his case within the rule announced by the authorities. The issue raised and tried was whether the wall was materially injured. The Chancellor was never called on to try the question attempted to be raised here.

CHALMERS, J., delivered the opinion of the court.

The complainant and the defendants were the owners of adjoining lots in the city of Vicksburg, upon each of which stood brick buildings connected by a party wall, one half of which rested on either lot. The buildings had been so constructed more than twenty years before, by one who then owned both lots; and in consequence of sales by him to different persons, they had become by subsequent conveyances the property in severalty of the parties to this suit. On March 17, 1879, the building of the complainant was totally, and that of the defendants partially, destroyed by fire. The party wall was somewhat injured, but to what extent is a matter of dispute. Both parties were insured by the same company, and upon an estimate of damages made by experts, received payment from the company upon the basis that the party wall had been rendered useless and would have to be rebuilt. The defendants insist that they received their money from the insurance company in bulk and without knowledge that in so doing they obtained payment in full for one half the value of the wall. Shortly afterwards they began to repair or rebuild their house, using the old party wall for this purpose, whereupon the complainant filed this bill, enjoining them from so doing, alleging that the wall was unsafe and dangerous, and praying that it should be torn down and rebuilt from the foundation, if thereafter to be used as a party-wall. The defendants having

answered, averring the entire safety and trustworthiness of the wall, much testimony was taken on the subject, which seems to have satisfied the Chancellor that the wall was not materially injured and would subserve the purposes of new buildings similar to the old ones. He therefore dismissed the bill. We are not prepared to say that the Chancellor erred in his conclusion of fact, but we think that independently of the question of the condition of the wall, the complainant was entitled to the relief prayed, and it will not be denied him because he rested his claim to it upon improper grounds since it cannot be claimed, except as a matter of costs, that by so doing he has misled his adversary or occasioned any surprise to him. As he was, in our opinion, entitled, upon the destruction of his house, to put an end to the easement previously enjoyed by the defendants in so much of the wall as rested upon his lot, and to decline longer to treat the wall as a party-wall, his legal rights should not be prejudiced because he gave as a reason for desiring to do so the unsafe character of the structure.

The owners of adjoining buildings, connected by a party-wall resting partly upon the soil of each, are neither joint owners nor tenants in common of the wall. Each is possessed in severalty of his own soil up to the dividing line, and of that portion of the wall which rests upon it; but the soil of each, with the wall belonging to him, is burdened with an easement or servitude in favor of the other, to the end that it may afford a support to the wall and building of such other. Each, therefore, is bound to permit his portion of the wall to stand, and to do no act to impair or endanger the strength of his neighbor's portion, so long as the object for which it was erected, to wit, the common support of the two buildings, can be subserved; and each will consequently be liable to the other for any damage sustained by a disregard of this obligation. But the obligation ceases with the purpose for which it was assumed, namely, the support of the houses of which the wall forms a part. If those houses, or either of them, are destroyed without fault upon the part of the owner, he is not bound to rebuild in exactly the same style and in exactly the same spot because his neighbor demands it. That this is true where the

wall itself is swept away with the house, is settled by authority. *Partridge* v. *Gilbert*, 15 N. Y. 601; *Sherred* v. *Cisco*, 4 Sandf. 480. It must be equally so where the wall alone remains. A wall is but a portion of a house, and the one is valueless without the other. To hold that so long as the wall stands the owner whose house has been destroyed is compelled to lose the use of his lot or to replace the destroyed building with another of exactly the same pattern, is to sacrifice the greater to the less, and to impose in perpetuity a servitude which was assumed only for a specific purpose. Such a doctrine, if enforced in the growing towns and cities of America, where localities which are dedicated at one time to residences are swallowed up in a few years by the encroaching demands of trade, would be intolerable. If he who has, in conjunction with his neighbor, erected dwelling-houses with party-walls, is thereby obliged, as often as his residence is destroyed, to replace it with one of exactly similar pattern, it would seriously impair the value of property and impose fetters upon its ownership too rigorous to be endured. We think the obligation is only that so long as the houses stand, the owner of neither shall do anything to impair the property of the other, and either shall be at liberty to repair and keep in order the common wall; but when, without the fault of either, the houses are destroyed, the easement is at an end, and each becomes the owner in severalty of his own soil and of so much of the wall as stands upon it, with a perfect right to tear it down or dispose of it in any way he sees proper. The decree will be reversed and the cause remanded, with instructions to enter a decree for the complainant; but as the complainant, by tendering a false issue, is responsible for much of the costs incurred, the costs of the lower court will be divided, the appellees to pay costs of this court.

*Decree accordingly.*