## Dunscomb *v.* Randolph.

### (*Jackson.* May 11, 1901.)

1. PARTY WALL. *Definition, nature and construction of.*

   A party wall is the division wall between two connected and mutually supporting buildings, either both actually erected or one only contemplated, of different owners, connecting, but not necessarily standing half on the land of each, ordinarily maintained at mutual cost, and always with the right of each owner to insert therein his timbers. Its sources are three: An express or implied contract between the parties; prescriptive, which is a particular form of the implied contract; a statute, or municipal by-law. When it is by a contract the contracting terms, as judicially interpreted, determine the rights of the parties. (*Post, pp. 97, 98.*)

2. SAME. *Exists by contract, when.*

   A division wall between two town lots, the property of different owners, is, in legal contemplation, a party wall, though erected wholly by one of the parties, in the main upon his own lot, where it was done under a contract with the other party that the footing, and, to a small extent, the wall, might be extended over on the latter's property, and that it should be so constructed that the latter might use it as a party wall, and that he should have the right to do so upon payment of one-half ts value. (*Post, pp. 98–101.*)

3. SAME. *Neither party can cut opening in.*

   Neither party has the right to cut windows or openings in a party wall, and will be enjoined from doing so. (*Post, pp. 101–103.*)

4. ESTOPPEL. *To deny party's right to maintain windows in party wall.*

   One of the proprietors of a party wall, who permits the other to cut windows and openings in the wall at considerable expense, and by his conduct induces the belief that he does not object

to same, is estopped afterwards to object to the continuance and maintenance of such windows or openings, in the absence of any showing of injury therefrom, or of any desire to use that part of the wall. (*Post, pp. 103–105.*)

FROM SHELBY.

Appeal from Chancery Court of Shelby County. F. H. HEISKELL, Ch.

PIERSON & EWING for Dunscomb.

RANDOLPH & SONS and TURLEY & TURLEY for Randolph.

McALISTER, J. The questions presented for our determination upon this record are, first, the right of the defendant, Randolph, to maintain windows and openings in a certain division wall between his premises and those of the complainant; second, the liability of complainant for the wall which stands near the shed erected by the complainant on the rear of his lot. The facts necessary to be stated for a clear understanding of the issues between the parties are that complainant and defendant are owners of adjoining lots on the east side of Main street in the city of Memphis. On the 18th of October, 1890, these adjacent proprietors entered into a written contract provid-

Dunscomb *v.* Randolph.

ing for the erection of a division wall between their adjoining premises.

Defendant Randolph erected his building and wall, completing same on August 1, 1891. The Randolph building was seven stories in height, containing ten stores on the ground floor and about two hundred and forty rooms, or divisions for rooms, on the floors above the ground floor. The rooms are designed for the use of professional and business men for offices and places of business, and are largely occupied for those purposes. In 1893 defendant Randolph, in order to promote the comfort of his tenants as well as to increase the rental value of the property, caused windows to be cut in the south (division) wall on east floor of the building opposite each of the three main halls extending through from north to south. Those windows were put in without in any way weakening or injuring the wall of the building. Three windows were cut on the second floor, two on the third floor, two on the fourth floor, three on the fifth, and two on the sixth floor.

It further appears that in July, 1899, this injunction bill was filed by Mrs. Dunscomb against defendant, Randolph, in which it was alleged that the complainant was about to commence the erection of a building on her lot adjoining the Randolph premises, and that the windows and openings in the south wall of the Randolph building;

made by the defendant, Randolph, for his own use and benefit, would obstruct and interfere with the complainant in the erection of her building, and were in violation of the contract, which gave complainant right to build to the south wall.

The bill prayed an injunction restraining the defendant from in any manner interfering with the use by the complainant of the wall as a party wall in the building she was about to commence.

The bill also prayed that the written contract be specifically performed by the defendant, Randolph, and that he be required to close all openings and windows in the wall and that he be required to fulfill the terms of the contract providing for the party wall.

It also prayed that the value of the wall space to be used by the complainant in the erection of her building be fixed and ascertained, to the end that she might pay the same.

An injunction issued as prayed upon the fiat of Hon. Jacob S. Galloway, Judge. Complainant then proceeded, and erected a two-story building, adjoining same to the division wall. On the 4th of December, 1899, the parties appeared in open Court and agreed, viz.:

First, that complainant had paid defendant, Randolph, the sum of $1,458.88 as full payment for a half interest in that portion of the south wall of her building which had been used by the

complainant in the erection of the two story building recently constructed by her.

Second, that defendant, Randolph, agreed at once to fill in and close up, at his own cost, the windows in the south wall which were covered or reached by the building of complainant, but did this, as he claimed, of his own volition and did not concede that the contract obligated him to do so, etc. This included, the agreement stated, the windows which were partially covered by the building of complainant as well as those which were completely covered by it.

The agreement further stipulated it was not to affect the right of complainant to demand that all the windows be closed, and this question was left open for determination in this cause, and all other questions not specifically settled were reserved. The agreement of the parties was made the decree of the Court.

Defendant, Randolph, then filed an answer and cross bill. In his cross bill defendant alleged that complainant, in addition to using the por tion of the south wall of his building for the purpose of her two-story building, constructed a brick wall on the south and east side of his lot and attached it to the east end of the south wall of the Randolph building, making a compact wall on the east; that complainant then constructed on the south side of her lot a stable and shed, to be used as a shelter for animals; that the

roofs of both the shed and stable rest upon and are connected with the top of the wall constructed by the complainant on the east and south sides of her lot. Defendant then stated that complainant is indebted to him for the value of the wall so used by her, in addition to the portion of the wall for which she has already paid.

Defendant, Randolph, then proceeded to state his understanding and interpretation of the written contract.

It is stated that the one purpose of the parties was to render the said wall of the building of the said Randolph sufficient and useful "as and for a party wall," and not then to make it a party wall, etc. This idea, it is claimed, is clearly expressed in the provision, to wit: "But if Mrs. Dunscomb or her representatives should hereafter conclude not to use the said Randolph wall as a party wall and build for herself, she may use the sixteen inches of footing to build upon as her wall."

It is then averred that as the complainant was not bound by the contract to use the wall as a party wall, but had the option to build her own wall, there was no obligation upon the said Randolph to treat the wall as a party wall in fact; or to anticipate the fact that complainant would ever use the wall as a party wall, until she made her election so to treat it and notified him of the fact.

It is further insisted that no title to or interest in the wall or in the ground on which the wall stood was granted, but only the right to use it. In other words, complainant took no interest in the wall under the contract, but would acquire the interest when the use was made and then the interest would be valued and paid for.

It is further insisted that in the contract the wall is stated to be the wall of the said Randolph; that this wall was not a party wall, but complainant was authorized to make use of it "as and for a party wall." It is averred that no part of the wall was put upon the lot of complainant, but that it was placed exactly on the outside, along the south line of the property of the said Randolph and the north line of the property of the complainant.

It was further insisted by defendant that the wall being entirely on his land and having made no contract with complainant as to the construction or character of his own wall, he had at all times reserved and had the right to change or alter the wall as he saw proper, making openings therein for windows and doing with the wall as his own interest dictated, subject only to the terms and provisions of his contract with the complainant.

There is no allegation in complainant's bill that the windows cut on the south wall of the Randolph building in any way injure the complain-

ant or her property, or interfere with her enjoyment of it, or decrease its value, or in any way inconvenience her or those who occupy her property.

The answer avers as a matter of fact that the windows are no injury or inconvenience whatever to complainant and do not increase the risk of fire on her premises or the rate of premium for insurance.

The answer also asserts that as complainant had for the first time elected to use the portion of the wall of the defendant, Randolph, after the windows had all been cut in the wall, she had by the contract only the right to use the wall in such condition; that complainant had built her house and had thus accepted the wall in the condition it was then in, with all the windows and without change, and had thereby estopped herself from objecting to the character of the wall and from insisting on the closing of the windows therein or the making of other changes.

It is further averred that Mrs. Dunscomb, through her agents, knew that the windows were being placed in the south wall of the Randolph building at the time they were constructed, and made no objection thereto.

The Chancellor, on the hearing, decreed that the complainant, Mrs. Marietta Dunscomb, was not entitled to require the defendant, Randolph, to

close the windows as they now exist, in the south wall of his building, and dismissed the bill.

It was also decreed that Randolph was not entitled, under his contract, to recover for that portion of his wall adjoining the stable and shed, which had been erected in the rear of complainant's two-story building, and the Chancellor accordingly dismissed the cross bill. The cause is now before this Court on writs of error sued out by both parties.

Complainant Dunscomb's second assignment is, viz.:

"It was error in the Chancellor to hold that the south wall of the Randolph building could be maintained as a party wall, as was agreed by contract to be done, and at the same time allow openings therein, and the Court erred in refusing to grant the relief prayed for by the bill and in refusing to require the defendant, Randolph, to close the windows cut in the said wall by him since its erection."

We will first consider the legal character of the division wall in controversy, viewed in the light of the written contract of the parties and the law governing such walls.

Mr. Bishop, in his work on "Non Contract Law," thus defines a party wall, viz.:

Art. 914. "A party wall is the division wall between two connected and mutually supporting buildings, either both actually erected or one only contemplated, of different owners, commonly but

23 P—7

not necessarily standing half on the land of each, ordinarily maintained at mutual cost, and always with the right of each owner to insert therein his timbers."

Art. 915. "Its sources are three—an express or implied contract between the parties, prescription, which is a particular form of the implied contract, a statute or municipal by-law."

Art. 916. " . . . When it is by a contract the contracting terms, as judicially interpreted, determine the rights of the parties." Bishop's Non Contract Law; Am. & Eng. Enc. of Law, vol. 18, p. 5.

In *Watson* v. *Gray,* 14 Ch. D., 192, 194, Fry, J., gives, among other definitions of the phrase "party wall," the following:

"Then, thirdly, the term may mean a wall which belongs entirely to one of the adjoining owners, but is subject to an easement of right in the other to have it maintained as a dividing wall between the two tenants."

It will be observed, in the first place, that the object and purpose of constructing this wall is thus clearly expressed, viz.: "Whereas, it is desirable that the said wall of the said building of the said Randolph should be straight and also that the same should be so constructed that it may be used as a party wall by the said Randolph and the said Mrs. Marietta Dunscomb and those who may succeed to their respective rights."

Dunscomb *v.* Randolph.

The location of the wall is then defined, viz.: "Upon the line of the said Randolph for its entire length, except at a point 95.1 feet from Main street, where it strikes the line of the said Mrs. Marietta Dunscomb 8.5 feet from the north line of a building now upon her lot and runs within the wall of said building about twenty-one feet, more or less, until it intersects the line dividing said lots of the said Randolph and the said Mrs. Marietta Dunscomb, and follow the said line thence to the west line of Mulberry street."

The contract proceeds to say:

"It is further agreed, in order to render the said wall of the said building of the said Randolph sufficient and useful as and for a party wall, as before contemplated, that the said Randolph, and his agents and employees, shall have the right to extend the footings from Main street on the west to Mulberry street on the east sixteen (16) inches beyond the outside line of said wall, and into the property of the said Mrs. Marietta Dunscomb, such footings to be and remain permanently a part of said wall."

It is then provided:

"It is further agreed between the said parties that the said Marietta Dunscomb, or her heirs or assigns, may at any time hereafter use the said wall to be erected by the said Randolph, . . . they paying at the time they use the same one-

half the value of the entire wall so far as they make use of the same, such value to be ascertained by agreement between the parties at the time, or otherwise; such value, however, not to exceed the original cost of the wall used."

We think it quite plain from these provisions of the contract that it was the intention of the parties to establish this wall as a party wall.

The wall was to be built in part upon the ground claimed by Mrs. Dunscomb, for it is recited that the latter is to permit the house in the rear of her lot to be torn down and rebuilt by the said Randolph in order to straighten his line.

It is insisted by Randolph that Mrs. Dunscomb had no title to the 8 feet 5 inches, but it is admitted that she had possession, and was actually occupying the ground and voluntarily surrendered any right she might have in the premises in order to build this wall. *Deman* v. *Colberg,* 2 Shannon's Cases, 18.

It is further recited in the contract that the footings and foundations of this wall shall extend sixteen inches into the ground owned by complainant, Dunscomb.

But while these features of ownership are patent in the contract, that question is immaterial if it otherwise appears that a party wall was to be established.

In *Watson* v. *Gray,* 14 Ch. D., 192-194, Fry,

Dunscomb *v.* Randolph.

Judge, among other definitions of a party wall, gives the following, to wit:

"Then, thirdly, the term may mean a wall which belongs entirely to one of the adjoining owners, but is subject to an easement or right in the other to have it maintained as a dividing wall between the two tenants." We are, therefore, of opinion that the written contract between the parties provided for the erection of a party wall in the legal acceptation of that term, and that as such both parties are entitled to have. it maintained.

The wall, then, being in our opinion a party wall, the next question presented is whether either party may cut windows or openings in the wall.

The exact question was presented in *Graves et al. v. Smith,* 6 So. Rep. (Ala., 1889), p. 308, and it is said:

"There is no statute in the State regulating the subject of party walls, as in England and some of the American States. The question is, therefore, to be determined by the principles of the common law bearing on easements of this nature. It is our opinion that a party wall must ordinarily be construed to mean a solid wall, without windows or openings. Such openings tend to weaken. the strength of the structure, and impair its value for lateral support of the adjoining building. They prevent, or render inconvenient, the utilization of the wall for the erection of an

additional story for the building. They also increase the hazards of fire and injuriously affect the adjoining proprietor by unduly exposing his premises in various objectionable ways, which readily suggest themselves without any elaborate enumeration. If allowed to continue, moreover, for a period of twenty years, the privilege of the adjoining owner would mature into a perfect legal right under the doctrine of prescription. The cross easement which the appellee had in the wall was, in our opinion, violated by the attempt of the defendants to create the openings for the windows, sought to be restrained by injunction."

In *Milmer's appeal,* 81 Pa. St. Rep., 54, the defendant laid a foundation "partly upon the plaintiff's and partly on the defendant's line," but erected the wall "wholly within his own line," and in this wall made four windows. It was sought to have the same closed, and the bill was maintained, it being adjudged that the "defendant was bound to make the erection a solid wall," and it was further held: "If the builder starts the foundation as a party wall, thus taking the land of the adjoiner, he must carry it up so as to give the adjoiner all the benefits of a party wall."

The Court said: "The wall mentioned in the plaintiff's bill is clearly a party wall. The defendant could not, by receding upon the foundation of a part of it, carry up that part within

Dunscomb *v.* Randolph.

his own line, so as to destroy the character of the entire wall, and thus secure to himself the privilege of openings in it inconsistent with its character as a party wall."

It is insisted, however, by defendants that complainant is estopped to object to the windows now complained of, since she consented to their being placed there. This contention is based upon the following state of facts. As stated, the contract between these parties was dated October 18, 1890. The Randolph building was completed about August 1st, 1891. No windows were opened until the year 1898. On the 16th of September, 1898, while the openings for the windows were being cut, Mrs. Dunscomb addressed defendant, Randolph, the following letter, to wit: "I am told that you are cutting windows in the south wall of your building, corner Main and Beal streets, and hereby notify you that I will hold you responsible for any damage to my property or to any one on my property by brick or other material falling."

About this time J. S. Dunscomb, Mrs. Dunscomb's son and agent, saw George Randolph, the son of the defendant, and told him he did not mean to threaten a lawsuit in the letter referred to, but simply to put the defendant, Randolph, on his guard, that no further damage might be done by brick falling on the roof of

his mother's house and in the yard, endangering the tenants as well as the building.

There was no complaint of the windows being cut in the wall. Randolph thereupon, without further complaint from Mrs. Dunscomb, proceeded at considerable expense to finish cutting the windows, and they were thence used for the purposes of the building until July 21, 1899, when a formal complaint was made by letter of that date and the present injunction bill was filed. Complainant then proceeded and erected her two-story building during the pendency of the present suit.

It should be stated that after the agreed decree was entered herein, the defendant, Randolph, closed the four windows by bricking them up, thus making solid that portion of the wall covered by complainant's two-story building.

The windows which remain open are one on the second floor, two on the third, two on the fourth, three on the fifth, and two on the sixth floor. Complainant has no use for the wall at the present time, and the windows do not interfere with her, building nor, according to the proof, do they increase the risk of fire or the rates of insurance.

We think that under the facts stated, Mrs. Dunscomb must be held to have acquiesced in the cutting of the windows and to the use of the wall by defendant for this purpose, until such time as she may desire to use the wall

Dunscomb *v.* Randolph.

under the terms of the contract. If Mrs. Duns-comb had intended to object to this use of the wall by Randolph, she should have interposed this objection when the windows were being cut, but instead of this, she only objected to the damage, or injury, which might be done her property, or tenants, by falling brick or material, thus permitting Randolph to incur a large expense under the belief that complainant consented to the use of the wall.

We therefore hold that complainant is estopped by her letter and implied acquiescence in the cutting of such windows, as well as the representations of J. S. Dunscomb, her son and agent, to insist that the windows shall now be closed. But we do not mean to hold that complainant has forever estopped herself to demand that such windows be closed, but her acquiescence in the cutting of such windows, and their consequent use, will only be presumed until such time as she may desire to use the wall for the purposes contemplated by the contract.

So far as defendants' cross bill is concerned, we need say nothing further than that in our opinion the proof thereunder fails to establish any claim for recovery, and the same is dismissed.

For the reasons stated, the decree of the Chancellor is affirmed. The costs of the appeal will be divided.