### KIEFER *v.* DICKSON.

[No. 6,351.   Filed April 21, 1908.]

1. PARTY WALLS.—*What Constitutes.*—A wall built on the line between two buildings, for the common benefit, under an agreement, the flues being constructed for the use of both, and openings left for the insertion of joists and rafters by each, constitutes a party wall. p. 548.

2. PARTY WALLS.—*What Are Not.*—A wall built wholly upon the owner's land at his own expense, without any agreement, and containing windows but providing, for the adjacent owner, no openings to the flues or openings for joists or rafters, is not a party wall, though such owner permitted the adjacent owner to connect his building to such wall, and though such owner closed the windows so as to lessen his insurance. p. 548.

3. SAME.—*Creation of.*—Party walls may be created (1) by contract, express or implied; (2) by prescription, or (3) by statute. p. 549.

4. SAME.—*Windows.—Injunction.*—Neither owner has a right to maintain a window in a party wall; and injunction lies to prevent the maintenance of one, and to compel the restoration of a solid wall. p. 549.

5. SAME.—*Surveys.—Title.*—Where an owner builds a wall upon his own land. as the survey at the time showed, such wall will not be held to be a party wall because such survey might be wrong, and especially where the court fails to find that such survey was wrong. p. 549.

From Morgan Circuit Court; *I. H. Fowler,* Special Judge.

Suit by Julius C. Kiefer against Catherine Dickson. From a decree for defendant, plaintiff appeals. *Reversed.*

*George W. Grubbs* and *Watson & McGinnis,* for appellant. *Oscar Matthews,* for appellee.

ROBY, C. J.—Suit by plaintiff to quiet title to a business block in Martinsville, and to declare fifty feet of a wall a party wall. Defendant filed a cross-complaint, asking that the entire wall be adjudged a party wall, and to quiet her title, etc.

Trial was had by the court, which found for the plaintiff. A new trial, as of right, was taken by the defendant, and trial had under the same issues before a special judge. Special findings were made, conclusions of law stated thereon, and a decree entered for the defendant.

The plaintiff appeals, and assigns as error the conclusions of law rendered on the special findings.

A summary of the special findings is as follows: (1) (2) Trace the ownership of the property (see map). The Mitchells and Cunningham built a wall ("Mitchell wall")

extending from the street westward fifty feet. (3) In 1858 Stout, administrator of Cunningham, in erecting a hotel building, "extended the Mitchell wall to serve further for the north wall of his hotel" ("Stout wall"). In the erection of the Mitchell wall openings were left on the south side thereof to receive joists and were thus utilized by Stout. In the Stout wall, which was eighteen inches thick, were placed "eight or ten windows for light and ventilation, which was

North

| Owned by. | Giles Mitchell in 1834. Jas. M. Mitchell et al. 1836 to 1855. J. M. and S. M. Mitchell in 1855. |
| | S. M. Mitchell in 1869. Catherine Dickson (deft., appellee), since 1893. |

Alley. A.    ◄— 32 ft. —►◄— 50 ft. —►◄— 50 ft. —►    Main Street. B.

Tucker wall.    Stout wall. (18 in.)    Mitchell wall. (13 in.)

Owned by: Julius C. Kiefer (pltf., appellant), since 1901. Samuel Tucker in 1866. Amos Stout in 1858. James Cunningham in 1855.

Part of Lot 2, in Block 25, in the city of Martinsville, Ind.

(NOTE: This map is distorted more clearly to show the situation of the wall with relation to the property line.)

all the light they had from the north side of said hotel building." (4) Flues in the Mitchell wall were used by both parties and their grantors in common. (5) The hotel property passed into the hands of Samuel Tucker, plaintiff's immediate grantor, who "extended the Mitchell and Stout walls thirty-two feet ('Tucker wall') to the alley and erected a brick building one story high to be used in connection with his hotel property and for his sole use." The Mitchell wall, the Stout wall and the Tucker wall now constitute one con-

tinuous straight wall. The northwest corner of the Tucker wall is, according to a survey made by the city engineer, eight inches south of the dividing line between the properties. (6) The property line at the east end of the Mitchell wall is five and one-half inches north of the center of the wall. (7) The Tucker wall was built in 1898 so that the northwest corner of the building was eight inches south of the dividing line between the properties, the city engineer determining the line at the time. Defendant did not have notice of this measurement or erection. (8) Survey was made, prior to commencement of this suit, by the city engineer at the parties' request, and shows the same measurements as mentioned in (6) and (7). (9) The streets of Martinsville are crooked, not parallel, and do not cross one another at right angles. Survey was made by aid of street stones put in at intersections of the streets. There was no town plat. (10) The wall varies to the south as it runs west, being too far south at the west end and too far north at the east end. (11) Since its erection the Stout wall has formed the outside and north wall of the hotel building, and the windows in both stories have afforded and now afford light and ventilation to rooms on the north side of the hotel building. (12) In 1882 Mitchell built a one-story addition to his building, extending it thirty-seven and one-half feet west, using the Stout wall, and closed two or three windows in the hotel building. This was done by agreement of both parties and to lower insurance on the buildings. (13) Immaterial. (14) In 1882 Tucker put a Mansard roof on the hotel building, which he attached to the Mitchell wall. He also put in an iron front, abutting against the Mitchell wall on the south. (15) In February, 1904, the roof of the hotel was destroyed by fire. In rebuilding it plaintiff sought to use the Mitchell wall to support his roof. Defendant objected, claimed entirety of wall, denied that plaintiff had any right, title or easement in said wall, forbade him to use any part of it except to attach his rafters thereto, and plain-

tiff could only rebuild by resting his rafters against the south side of the wall, and that was the condition when this suit was commenced. Defendant is still claiming the entirety of said wall and denying plaintiff's right to use it except as before set out. (16) Immaterial. (17) Since the erection of the Stout and Tucker walls neither the defendant nor the defendant's grantors have used any part thereof except for the extension of the thirty-seven and one-half feet (see finding 12). (18) In 1893 an iron front was put on the Mitchell property which extended to the south side of the Mitchell wall. (19) Plaintiff purchased the estate with the walls all standing as they are now, knowing that the Mitchell and Stout walls had been standing for more than thirty years, and that the Tucker wall had been there since 1898, and that they all constituted one continuous wall; and no questions of their ownership have previously been raised. (20) If any agreement was ever made by the parties' grantors as to the use of the Mitchell or Stout walls, it was and is not known to the parties. Neither was any agreement ever made as to the Tucker wall.

The conclusions of law were stated as follows: "(1) That the walls known as the Mitchell, Stout and Tucker walls, standing between the properties of plaintiff and defendant, constitute one continuous, straight party wall, and stands on the line dividing said properties, running from Main street on the east to the alley on the west, a distance of 132 feet. (2) That said three several walls, known as the Mitchell, Stout and Tucker walls, constitute one continuous, straight party wall between the properties of said plaintiff and defendant, extending from Main street on the east to the alley on the west, a distance of 132 feet; and that said wall should be charged with a cross-easement and lateral support, and for all common need incident to party walls, for the use and benefit of said plaintiff and defendant for the support of their respective buildings."

A decree was entered upon the cross-complaint for the defendant, quieting her title and charging the entire wall "with a cross-easement and lateral support for the use and benefit of said plaintiff. and defendant for the support of their respective buildings."

The conclusions of law as stated by the court are not warranted by the findings. The only possible grounds upon which the conclusions are drawn is that all three walls, built at different times and by different owners, are party walls, for the reason that they now constitute one continuous wall.

The Mitchell wall is clearly a party wall, possessing all the characteristics thereof. It was erected as a dividing line between two buildings, built at the same time,

1. for the common benefit and convenience of both the tenants which it separates (*Fidelity Lodge, etc.*, v. *Bond* [1897], 147 Ind. 437; *Dunscomb* v. *Randolph* [1901], 107 Tenn. 89, 64 S. W. 21, 89 Am. St. 915, 938), under a contract and agreement between the owners (*Cartwright* v. *Adair* [1901], 27 Ind. App. 293), with flues so constructed as to be used by both properties (*Fidelity Lodge, etc.*, v. *Bond, supra*, at page 442), and with openings left on both sides for the insertion of joists and rafters.

The Stout and Tucker walls possess none of the attributes of party walls. They were not built as division walls between two connected or mutually separated build-

2. ings, both erected or one contemplated. They were not built at joint expense. They were not built under contract between the parties. They are not solid walls, windows being left in them. No openings for joists or rafters were left in the north side of them.

The only use of the Stout wall by the Mitchells was of thirty-seven and one-half feet by permission and agreement, and the windows which were closed in that wall were so closed under an agreement between the parties whereby they could lessen the rate of insurance. The Tucker wall is entirely on appellant's land, and has never been used by

appellee for any purpose whatever. Party walls can
be created in three ways: (1) By contract, express
or implied, between the parties; (2) by prescription;
(3) by statute. *Whiting* v. *Gaylord* (1895), 66 Conn. 337,
34 Atl. 85, 50 Am. St. 87, 95, note; *Dunscomb* v. *Randolph,
supra; Fidelity Lodge, etc.,* v. *Bond, supra.* The creative
elements necessary to either method are not shown.

It cannot be said that because appellant or his grantors
saw fit to extend the Mitchell wall he intended making the
new wall or walls anything but private walls. They
were entirely on his land and had windows in them.
While the presence or absence of windows is not an
infallible test of a party wall, their presence is a good indi-
cation that it is not a party wall. It is improbable that a
man would erect a wall to a hotel building on his own
ground, placing windows therein, which are imperatively
necessary in such a building, with the intention that it be a
party wall. Where a wall is a strict party wall,
neither of the adjoining owners has a right to main-
tain windows therein (*Graves* v. *Smith* [1888], 87
Ala. 450, 6 South. 308, 13 Am. St. 60, 5 L. R. A. 298; *Fidel-
ity Lodge, etc.,* v. *Bond, supra,* at page 445), and equity will
enjoin such maintenance (22 Am. and Eng. Ency. Law (2d
ed.), 246, and cases cited), and require the restoration of the
wall to a solid wall (*Corcoran* v. *Nailor* [1888], 6 Mackey
580; note to *Dunscomb* v. *Randolph* [1901], 89 Am. St.
915).

In special finding nine the court points out the difficulty
of a correct survey, owing to the manner in which the city
of Martinsville is laid out, and appellee urges that
the survey is thereby discredited, and that the court
might consider all the walls to be on a line recog-
nized as the dividing line of the properties. But in the
special findings five and seven it is said that before the erec-
tion of the Tucker wall a survey was made and the wall was
placed "eight inches south of the stake set by the city engi-

neer," and there is nothing in the findings to show that the court did not consider the surveys correct.

The judgment is reversed, and the cause remanded, with instructions to restate the conclusions of law consistently herewith.