[No. 8392.   Department One.   November 30, 1909.]

## WILLIAM R. HAWKES, *Respondent*, v. DAVID M. HOFFMAN et al., *Appellants.*[1]

APPEAL—REVIEW—HARMLESS ERROR. On a trial before the court without a jury, rulings at the trial are without prejudice where pertinent evidence was not rejected, Bal. Code, § 6535, requiring the supreme court to disregard technicalities and retry the case on the merits.

PARTY WALLS—COVENANTS RUNNING WITH LAND. An agreement to pay half the cost of a party wall, erected on the line, is in the nature of a covenant running with the land and binds successors in interest, with notice actual or constructive.

VENDOR AND PURCHASER—BONA FIDE PURCHASER—PARTY WALLS. The purchaser with notice of a party wall agreement, from a former purchaser without notice, may claim the immunity of his vendor.

PARTY WALLS—IMPLIED CONTRACT. The use of a party wall, constructed on the line by the adjoining owner, raises no implied obligation to pay one-half of its cost, an express contract being necessary.

PARTY WALLS—NOTICE OF AGREEMENT—BONA FIDE PURCHASER. Notice that a party wall was built upon a division line by the person

[1]Reported in 105 Pac. 156.

who owned the adjoining tract, and used by him, is not sufficient to put a purchaser upon inquiry as to an unrecorded party wall agreement which charged the land purchased with one-half the cost of the wall.

Appeal from a judgment of the superior court for Pierce county, Shackleford, J., entered August 17, 1909, upon findings in favor of the plaintiff, in an action upon a party wall agreement, after a trial before the court without a jury. Reversed.

*Theo. D. Powell*, for appellants.

*Johnston & Swindells*, for respondent.

FULLERTON, J.—On May 20, 1890, the respondent owned lot 20, in block 1104, in the city of Tacoma, and the Tacoma Land Company, a corporation, owned the adjoining lot, numbered 21, in the same block. The parties on that day entered into an agreement in writing, duly acknowledged, by the terms of which the respondent agreed to erect a party wall, according to certain specified dimensions and out of certain specified materials, one-half upon his own lot and one-half upon the lot of the Tacoma Land Company. The agreement contained the following clauses:

"Third. The party of the first part [the respondent in this action] shall furnish and provide all other materials for and shall construct said wall and shall keep a true account of the cost thereof, and before the party of the second part, its successors or assigns, shall use said wall or any part thereof it or they shall first pay to the party of the first part therefor for each story of said wall or any part thereof purposed to be used as follows: *Provided, however,* that if the party of the second part, its successors or assigns, shall use only a part of a story it or they shall pay for the whole of said story:

"For the first story one-half of what it would cost to build a lawful party wall and foundation to sustain a one-story building at the rate paid by the party of the first part for labor and materials used in and upon said wall.

"For the second story one-half of what it would cost to build a lawful party wall and foundation to sustain a two-story building at the rates paid by the party of the first part for labor and materials used in and upon said wall.

"For the third story one-half of what it would cost to build a lawful party wall and foundation to sustain a three-story building at the rates paid by the party of the first part for labor and materials used in and upon said wall.

"For the fourth story one-half of the whole cost of said wall.

"It being expressly understood and agreed that in no event shall the party of the second part be liable under the terms of this agreement to pay for more than one-half of the entire cost of said wall, or for more than one-half of what it would cost at the rate paid by the party of the first part for labor and material used in and upon said wall to build a lawful party wall and foundation to sustain a building of the height the party of the second part may from time to time erect.

"Ninth.    The benefits and burdens of the covenants herein contained shall annex to and run with the land herein described so long as said wall continues to exist and shall bind the respective heirs, legal representatives and assigns of the respective parties hereto."

Acting pursuant to the agreement, the respondent, in the year 1890, erected a four story party wall in accordance with the stipulations therein contained, one-half upon his own property and one-half upon that of his co-contractor, at a cost of three thousand two hundred sixty-one dollars and thirty-three cents, all of which he duly paid.  The agreement was not recorded in the record of deeds of Pierce county until February 13, 1909.

After the execution of the agreement and the erection of the party wall, but prior to the time the agreement was recorded, the Tacoma Land Company mortgaged its lot to the Provident Life & Trust Company, without referring in any way to the agreement.  This mortgage was foreclosed and the property sold by the sheriff of Pierce county under the decree of foreclosure to the Tacoma Land & Improvement

Company, which company afterwards received a sheriff's deed therefor. The Tacoma Land & Improvement Company conveyed by warranty deed to one George L. Dickson, who in turn conveyed by a similar deed to the present appellants. Each of the deeds last mentioned were executed and delivered prior to the time the party wall agreement was recorded, and neither of them contained any reference thereto. Neither the Provident Life & Trust Company, at the time it took its mortgage upon the lot, nor the Tacoma Land & Improvement Company nor George L. Dickson, at the time of their several purchases, had any notice or knowledge of the existence of the party wall agreement other than such as is necessarily inferred from the fact of the existence of the party wall, and that one-half thereof stood upon the property purchased by them. The appellants, however, at the time they purchased, had full knowledge of the party wall agreement and of all its terms and conditions.

After their purchase, the appellants erected a four-story building upon lot twenty-one, using the party wall as one of the walls of the new building. Thereafter the respondent brought the present action to recover from them one-half the original cost of the wall. The trial court held that he was entitled to recover, and entered judgment accordingly. This appeal was taken therefrom.

During the progress of the cause in the court below, the appellants took many exceptions to the rulings of the court relating chiefly to questions of practice. These are urged upon us here, but we find it unnecessary to discuss them in detail. Even were the rulings of the court in every instance not technically correct, no prejudice resulted to the appellants thereby. No evidence was admitted that was not admissible under the actual issues between the parties, and none was rejected pertinent thereto. The cause is here on its merits, and in such cases this court is required by statute to hear it on its merits, disregarding any technical defect which has not

operated to the prejudice of the party complaining. Bal. Code, § 6535 (P. C. § 1083).

Passing then to the merits of the controversy, the appellants first contend that the party wall agreement is a personal covenant, not one running with the land; that their particular grantor, who entered into the agreement personally, may be bound thereby, but subsequent purchasers with or without notice are not so bound. This, however, is no longer an open question in this state. In *Hoffman v. Dickson*, 47 Wash. 431, 92 Pac. 272, 93 Pac. 523, where this very agreement was under consideration, it was held that an agreement of this character was in the nature of a covenant running with the land, and was binding upon the grantees of the respective parties. . The conclusion there reached was subsequently approved in the case of *Sandberg v. Rowland*, 51 Wash. 7, 97 Pac. 1087, where it is said:

"On the subject of the payment of the expense of the construction of a party wall, the decisions of the courts have not been uniform. On the contrary, there has been an irreconcilable conflict. In New York and Illinois it has been uniformly decided that the payment for a party wall is in no way connected with the land, and that the covenants in regard to the payment of the same or for its use cannot be construed to run with the land. But these are extreme cases, the logic of which does not seem to have appealed to courts generally. In other jurisdictions it has been determined that the right to that portion of a party wall resting on the lot of an adjoining owner is not personal to the owner of the lot on which the building is erected, but one running with the land, and that therefore a conveyance of the lot on which the building is erected passes to the grantee the right to recover of the adjacent owner the value of one-half of the wall when used by him."

We are satisfied with these holdings, and, if the question be not in fact *res judicata*, we have no desire to depart therefrom.

The right of the appellants to claim the immunity of purchasers without notice cannot of course be questioned. Al-

though they had actual notice themselves of the existence of the party wall agreement it is conceded that their grantor had no such notice, and the rule is that a purchaser with notice from a purchaser without notice may claim any immunity his grantor has because of the fact. "The reason is to prevent a stagnation of property, and because the first purchaser, being entitled to hold and enjoy, must be equally entitled to sell." Chancellor Kent in *Bumpus v. Platner*, 1 Johns. Ch. 213. See, also, *Stanley v. Schwalby*, 162 U. S. 255, 16 Sup. Ct. 754, 40 L. Ed. 960, 2 Warvelle, Vendors, p. 606.

Nor can it be successfully denied that the appellants, in order to be charged with liability for the costs of the wall, must have had notice, either actual or constructive, of the covenant obligating their grantor to pay. The rule is general that where the owner of a lot erects a wall on the boundary line between his own and the abutting lot, resting partly upon each, no implied obligation is imposed on the owner of the abutting lot to contribute to the cost of the wall upon making use of it. Such an obligation is not implied in law. To exist at all it must be created by specific contract. See note to *Dunscomb v. Randolph*, 89 Am. St. 915 (107 Tenn. 89, 64 S. W. 21). It must follow therefrom that one buying without notice of the agreement stands in the position of all innocent purchasers for value; he takes the property without the incumbrance.

The principal question, therefore, is, Are the appellants purchasers with notice? It is conceded that the only notice their immediate grantors had is such as was implied from the fact that the party wall was erected on the dividing line of the lots, and that the owner of the abutting property was making use of the wall to support a building upon his property. This undoubtedly was notice that the wall might be there of right, and that the appellants as purchasers would have no legal warrant to require the removal of the wall as an unwarranted trespass upon their property. But it seems

to us that it would be going too far to say that it was notice of anything more. While it is a general rule that one who has notice of acts sufficient to put him upon inquiry is deemed to have notice of all facts which reasonable inquiry would disclose, the rule does not impute notice of every conceivable fact, however remote, that could be learned from inquiry; it imputes notice only of those facts that are naturally and reasonably connected with the fact known, and of which the known fact can be said to furnish a clue. In the language of Judge Wright in *Birdsall v. Russell*, 29 N. Y. 220:

"The rights of a purchaser are not to be affected by constructive notice, unless it clearly appears that the inquiry suggested by the facts disclosed at the time of the purchase would, if fairly pursued, result in the discovery of the defect existing but hidden at the time. There must appear to be, in the nature of the case, such a connection between the facts discovered and the further fact to be discovered, that the former may be said to furnish a clue—a reasonable and natural clue—to the latter."

Furthermore, as we have said in discussing another question, no legal obligation to contribute to the cost of a party wall erected on the boundary of his land by the adjacent owner is imposed upon one who merely makes use of the wall; such an obligation must arise out of contract. It is also the rule that, if one of the owners of a party wall desires to erect a new wall of more extensive dimensions upon the site of the old wall, he cannot compel his co-owner to share the expense with him, in the absence of an express contract to that effect, and if an existing party wall is destroyed by fire, lapse of time, or otherwise, in the absence of a contract requiring the owner to rebuild, the easement is at an end, and there is no obligation resting upon either party to rebuild. *Hoffman v. Kuhn*, 57 Miss. 746, 34 Am. Rep. 491; *Antomarchi's Executor v. Russell*, 63 Ala. 356, 35 Am. Rep. 40; *Sherred v. Cisco*, 4 Sand. 480.

Again, the erection of a party wall is as much usually for

economy in the matter of space as it is for economy in the matter of cost, and contracts are not unusual where the owner of a lot has agreed with the owner of an adjoining lot to erect at his own cost a party wall one-half upon the land of each, and allow the adjoining owner to use the same without contributing to its cost, merely for the sake of the additional space the privilege would give him for his own building. Such, for instance, was the nature of the agreement in the case of *Huck v. Flentye*, 80 Ill. 258, and other instances in the books can also be found. The foregoing considerations, we think, lead to the conclusion that knowledge by an intending purchaser that a wall has been erected on the dividing line of the land he intends purchasing and the land of an adjacent owner is not notice to him that he must contribute to the expense of constructing the division wall in case he made use of it. Such a deduction is too remote from the fact known to legitimately follow therefrom, and the one fact furnishes no natural or reasonable clue to the existence of the other. And this being true the appellants in the present case must be considered to be purchasers without notice and not liable to contribute to the expense of constructing the wall in question.

But two cases have been called to our attention where this precise question has been decided. The first is from the supreme court of South Dakota. In that case the agreement had not been recorded, and it was conceded that the only notice the purchaser sought to be held had at the time of his purchase was the fact of the existence of the party wall. Discussing this question the court said:

"No case has been called to our attention, and we think none can be found, in which the existence of such a wall has been held to give constructive notice of the existence of an agreement binding the owner of an adjoining property to pay a portion of the expense incurred in the erection of such wall, and the only constructive notice that seems to have been recognized by the courts is that imparted by the recorda-

tion of the party-wall agreement." *Scottish-American Mortgage Co. v. Russell*, 20 S. D. 42, 104 N. W. 607.

The second case is from the supreme court of Missouri. This case is somewhat peculiar in the fact that the judge writing the opinion reached a conclusion that would require a different judgment from that pronounced by the court, but which was not followed because his colleagues did not concur in his reasoning. The facts were that Roach & Stitt entered into an agreement with one Elliott, by the terms of which they agreed to "place the walls of their building, now in the process of erection, six (6) inches on the lot now owned by the party of the second part [Elliott] ; and the party of the second part further agrees that when he shall join said walls he will pay to the party of the first part one-half the cost of so much of said walls as he may join to." Roach & Stitt thereupon completed the wall and thereafter sold their lot to one Cheatham. Elliott conveyed his lot to Sharp, who had no notice of the contract between Roach & Stitt and Elliott other than such as existence of the wall might impart. Sharp after purchasing the lot erected a building thereon, using the party wall as one of the walls of his building. Cheatham thereupon brought an action to recover one-half the cost of the wall. He recovered in the court below, but the judgment was reversed on appeal for the reason that Sharp was a purchaser without notice. *Sharp v. Cheatham*, 88 Mo. 498.

There are other cases which, although they do not directly decide the question, recognize the principle that notice of a contract by which one lot owner agrees with another to pay a portion of the cost of a party wall erected by the other upon the division line of their property, as a condition precedent to using it, must be something more than the mere fact of the existence of the party wall. For example, in the case from Sanford's reports, above cited, at page 489, the judge arguing against the liability of one to pay for a party wall merely because he has made use of it, uses this language:

."Then what is the effect of his using the party wall? He
found it on his land, on taking possession. He wanted to
build. Was he to tear it down, or insist on the plaintiff's
removing the half wall, so that he could occupy his whole
land? This he might have done (*Wigford v. Gill*, Cro. Eliz.
269), to her great injury, and with probably no advantage
to himself. Or was he not entirely at liberty to use as his
own, an erection on the land he had bought, without subject-
ing himself to pay for work done without his request or
knowledge. We think he was. We do not see how the de-
fendant is liable to pay for half of this wall, because he used
it, any more than he would have been liable, if the Duryees
had rebuilt before he bought, and had put their beams into
the wall, without paying the plaintiff for it. Yet the propo-
sition would be at once scouted, that the purchaser of a house
in this city, having paid to the owner the price, in good faith
and without notice, would be liable to the owner of an adjoin-
ing house, for the unpaid half of the cost of the party wall
which separated the two tenements."

In *Kells v. Helm & Yerger*, 56 Miss. 700, the court speak-
ing on the liability of a grantee to contribute towards the
cost of a party wall erected under a contract with his
grantor, used this language:

"If it be conceded that the appellant acquired a lien on the
lot of Miazza, by virtue of the assignment by Cooper to him
of the claim for one-half of the cost of the wall, it would not
follow that this claim could be asserted against these de-
fendants, who are purchasers, without notice, for a valu-
able consideration, or hold under the Greens, who were such.
The agreement between Cooper and Miazza was never re-
corded; and it is admitted that the Greens had no actual
knowledge of the claim arising out of it, and now set up by
the appellant. That they knew, when they advanced their
money and took the deed in trust, that Cooper had built the
wall, and that afterwards Miazza had used it as one of the
walls of his building, would not constitute notice; for it was
not shown that they knew that Miazza did not contribute his
share to the building of the wall in the first instance; and if
it was so shown, they would have had the right to presume
that Miazza had afterwards paid his share of the cost of the

wall, since he was not allowed by law to appropriate the wall to his use, without first making payment of one-half its cost or value."

So, in *Standish v. Lawrence*, 111 Mass. 111, the court rests its judgment, holding a grantee liable to contribute to the cost of a party wall erected on the line of his lot prior to the time of his purchase, on the fact that he had actual notice of the agreement of his grantor by which the liability to so contribute was created. To the same effect are *Wickersham v. Orr*, 9 Iowa 253, 74 Am. Dec. 348; *Ferguson v. Worrall*, 125 Ky. 618, 101 S. W. 966.

The grantors of the appellants were, therefore, purchasers without notice of the party wall contract, and as such could not be compelled to contribute towards the cost of the wall; and the appellants, as their grantees, partake of that immunity, and cannot themselves be held. The judgment appealed from is reversed and remanded with instructions to enter a judgment to the effect that the respondent, the plaintiff below, take nothing by his action, and that the appellants recover their costs.

RUDKIN, C. J., CHADWICK, MORRIS, and GOSE, JJ., concur.